## No. 15,094.

### Twin Lakes Reservoir and Canal Company *v.* Platt Rogers, Inc.

(147 P. [2d] 828)

Decided March 13, 1944. Rehearing denied April 10, 1944.

156

Messrs. Bartels, Blood & Bancroft, Mr. Harry E. Mast, for plaintiff in error.

Mr. Robert S. Gast, Mr. Sam Parlapiano, Mr. Robert S. Gast, Jr., for defendant in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

THE parties to this suit occupied the same relative positions in the trial court as here, and we will refer to them respectively as plaintiff and defendant. The review is directed to a judgment of the district court refusing to disturb an arbitration award which plaintiff sought to have set aside.

Plaintiff is a mutual ditch and reservoir company, organized under the laws of the State of Colorado by farmers owning lands in Crowley county, and defendant is a corporation engaged in the construction business, with it principal office at Pueblo, Colorado. In addition to previously held water rights in the Arkansas River and the Twin Lakes Reservoir, plaintiff had acquired an appropriation of water from the Roaring Fork River in Pitkin county, the utilization of which required a conveyance of such water via a tunnel through the Continental Divide to the headwaters of Lake Creek, a tributary of the Arkansas River, and thence to the point of distribution to its stockholders for the irrigation of their lands in the lower valley of that stream. In furtherance of this project, on September 14, 1933, plaintiff entered into a written contract with defendant for the construction of certain units of plaintiff's "Independence Pass Transmountain Diversion System." The units so to be constructed consisted of the driving of Tunnel No. 1; the placing of certain concrete lining in a portion of said tunnel; the construction of Lincoln Gulch Diversion Dam, the New York Collection Canal, and incidental work in connection with these units. Including extras and other allowances made to defendant during the course of construction, more than $1,000,000.00 has been paid to defendant by the plaintiff.

October 18, 1935, the chief engineer of plaintiff delivered his final estimate fixing the amount he found to be due to defendant under the terms of the contract. Thereafter defendant filed with the plaintiff certain written objections to the final estimate, and also made certain specific claims against the plaintiff for sums of

money claimed to be due it in addition to that allowed by the final estimate. Some of these objections and claims were compromised and paid to defendant by plaintiff; others were withdrawn by defendant and finally, when it appeared that no further amicable adjustment could be reached, the parties entered into a written agreement submitting certain specific claims of defendant against plaintiff to arbitration under the procedure established by sections 314-320 inclusive, chapter 27 of the Code of Civil Procedure, '35 C.S.A. The agreement provided that three qualified, experienced, disinterested engineers should be selected to act as arbitrators, one of whom should be selected by plaintiff, one by defendant and the third by the two arbitrators so designated. Conformably, to act on such board, plaintiff chose H. C. Hinderlider, state engineer of Colorado; the defendant, W. C. Jones, and the two, Burgis Coy.

April 5, 1937, the board of arbitrators unanimously rendered an award in favor of defendant and against plaintiff, for the aggregate sum of $67,645.40. Pursuant to code section 318, supra, defendant filed this award with the clerk of the district court of Pueblo county and, in accordance with the procedural requirements of the statute, that court entered judgment thereon in favor of defendant for such sum.

Soon thereafter plaintiff instituted the suit here in consideration to set aside said award. In course, the district court sustained defendant's general demurrer to plaintiff's second amended complaint and dismissed the action, whereupon plaintiff sued out a writ of error in this court, as a result of which said complaint was held to state a cause of action; the judgment was reversed and the cause remanded for further procedure. *Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc.*, 105 Colo. 49, 94 P. (2d) 1090. Following remand, defendant filed its answer, the plaintiff its replication, and the case was tried to the court without the intervention of a jury. After considering the matter for some time, the

district court rendered its decision dismissing plaintiff's complaint, and judgment was entered accordingly. To review that adjudication plaintiff now prosecutes a writ of error.

Three of the controversies submitted to arbitration arose in connection with the New York Collection Canal excavation; two concerned the tunnel construction, and the last related to interest due on deferred estimates and retained percentages.

As set forth in the agreement for arbitration, defendant's specifications of underpayment on the canal work were as follows: First: (Item 1, sec. I) It claimed $22,034.15 (corrected during the hearing before the board to read, $21,624.15), for increased operating costs and excavation, camp maintenance and supervision arising from the delay of plaintiff's chief engineer in staking and in making tests and from changes in the amount of excavation required; Second: (Item 1, sec. II) It estimated the amount of $9,137.50 to be due for the excavation of materials beyond the stakes but within the slopes shown on the contract drawings, asserting in this connection "the amount claimed is necessarily estimated, as no accurate data is now available to us showing actual quantity excavated;" Third: (Item 2, sec. II) It contended that it had been underpaid to the extent of $16,925.00 on account of improper classification of materials excavated. The method of computation was set out as follows:

"Total excavated as allowed 89,534 cu. yds.

"Your Engineer's classification:

No. 1  29,568 cu. yds. at $1.00..$  29,568.00
No. 2   9,507 cu. yds. at $1.50..   14,260.50
No. 3  50,459 cu. yds. at $2.00..  100,918.00

$144,746.50

"Our Classification:

No. 1  11,639.4 cu. yds. at $1.00..$11,639.40
No. 2  11,514.1 cu. yds. at $1.50..  17,271.10

No. 3   66,380.5 cu. yds. at $2.00..132,761.00
                                         $161,671.50
                              Difference   $ 16,925.00"

The board disallowed claims First and Second, for the reason, as expressed in the award, "that the contract and specifications do not provide for the use of the method employed by plaintiff [defendant] for determining what he claims to be due him. The only proper basis for making a determination of any amount which might be due plaintiff [defendant] with respect to" these items "must be predicated upon actual yardage properly excavated, proper classification of such materials, and the unit price bid in the schedule for their excavation."

As to the Third claim the board, having proceeded with a resurvey of portions of the canal and the consideration of the character of the materials excavated throughout the section in controversy, determined that defendant was rightfully entitled to compensation for the excavation of 95,150.3 yards of materials, which, as classified by the arbitrators, under unit contract prices, amounted to $172,784.50. From this total the board deducted the sum previously allowed by plaintiff on final estimate and fixed the balance due defendant as $28,238.00.

■ Inter alia, plaintiff contends that this award was beyond the terms of the submission. In support, counsel assert that as submitted, the three claims in consideration were distinct and unrelated; that having rejected the first two, which respectively were for extra costs and extra yardage in excavation on the canal, the arbitrators, on the third, which solely related to the alleged improper classification of 89,534 yards of material, might not turn around and make an award based upon the excavation, according to their resurvey, of a greater yardage (95,150.3) and its classification as a whole. In other words, it is said that under the terms of the submission each of the three claims had to be considered as independent transactions and that factors of excava-

tion for which no allowance was made on the first two, should not be included in the computation of the third, which pertained to a dispute over the classification of a specified yardage. On this point the trial court expressed: "It seems to the court that the award shows on its face the allowance of $28,238 as to Item 2 of Section II was intended to cover all three claims; further, that the arbitrators were entitled to grant such relief as was embraced" in the submission and the proof, "regardless of the form in which the relief was asked."

We think this conclusion sound. The language of the award as to the reasons for the so-called "disallowance" of the first two, hereinabove quoted, does not so much as intimate a denial of the merits, but bespeaks only a qualified rejection of the formula for computation advanced by defendant, to the end that the three claims might be considered together upon what the arbitrators considered a basis fair to both parties. The testimony at the trial generally was in accord with this view.

■ While, as a general rule, in the case of the submission of special claims to arbitration the award must be limited to the particular matter submitted, it well may extend to questions that necessarily arise therefrom. 6 C.J.S., p. 222, §80(b). The claims in consideration all arose from canal excavation. As stated: One was for extra costs therefor; another for extra yardage, and a third for a proper classification of material moved. It is quite clear that the figure of 89,534 cubic yards mentioned in the third claim was based upon the computation of plaintiff's, not defendant's, engineer, and any intention of defendant to be limited to such yardage in its overall recovery is discounted by its claim for an *estimated* excess yardage in the second submission. The aggregate total claimed by defendant on the three submissions was $47,686.65. The single award of $28,238.00 based upon the arbitrators' determination of the actual yardage moved, and its proper classification, did no more than allow defendant compensation for the mate-

rials actually excavated on the canal but for which no payment had been made. Thus, we are satisfied that the award returned was concerned solely with questions which either were directly submitted or necessarily rose from the three submissions, and were within their scope.

In the interest of sequence in consideration we mention now, as will be elaborated later in the opinion, that we find no basis for the impeachment of the award from plaintiff's contention that in measuring the excavation and classifying materials therefrom, the arbitrators wrongly interpreted the specifications of the original contract.

The validity of this particular award is questioned further by a series of objections grounded upon what is referred to as the Stiefel resurvey of the New York Collection Canal, which in a considerable degree supplied the basis for the computation of the total yardage, for the excavation of which compensation was allowed defendant.

██ ██ It appears that after hearing the testimony presented by the parties and an inspection of the premises, the arbitrators concluded that to reach a fair decision a recross-section survey of the canal was necessary and so informed the parties. Then, as since has been the situation, the parties were in dispute as to which was obligated to supply this needed engineering data but, nevertheless, neither objected to the resurvey and agreed on the portions of the canal to be included therein. The board then employed A. C. Stiefel, a civil engineer, and certain others as assistants to do the work and gave specific instructions as to the technique of conducting the survey. When the survey was completed, the board had several conferences with Mr. Stiefel and his staff concerning the matter without giving notice to the parties, and without the presence of either. Ultimately certain figures and computations exclusively found in the Stiefel report were incorporated into the

award and became factors thereof. In these circumstances plaintiff contends: (1) That this employment of Stiefel and his assistants constituted a delegation of authority by the arbitrators, which rendered their award unlawful, and, (2) that the acceptance and consideration of the report of such survey without notice to the parties violated the law as well as the express terms of the arbitration agreement requiring the board to give the parties "reasonable notice in writing of the time and place when * * * hearings are to be held." As a general rule arbitrators have no power to delegate to others the whole or any material portion of the authority granted to them or the judicial functions devolving on them under a submission. 6 C.J.S., p. 191, §50; 3 Am. Jur., p. 936, §111, and p. 966, §144. It is equally certain that unless obviated by statute, agreement or waiver, the parties to an arbitration are entitled to reasonable notice of the time and place of hearings, and have the absolute right to be heard and to present evidence before the board. *Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc., supra;* 3 Am. Jur., p. 929, §102, and p. 931, §104. The circumstance that the complaint alleged violations of these principles which in legal effect, for the purposes of the demurrer, were admitted to be true by defendant, led to the reversal order entered on our former consideration of this case. *Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc., supra.* Since, as the case now stands, these matters have been put in issue by the pleadings and proof, a determination thereof must rest on the factual situation attendant. Upon this basis the trial court found that none of these fundamental rights of plaintiff had been transgressed in the conduct of the arbitration. We are convinced this conclusion is amply supported by the evidence. Inter alia, the arbitration agreement (section 2) provided that the arbitrators might "make such independent investigation of the matters in controversy as to them may seem necessary in order to arrive at a correct solution of the

matter. The fees and expenses of such independent investigation to be borne by such party or parties hereto as to the said board of arbitrators may seem just and proper." Section 3 thereof further specified that the award should be made by the arbitrators "after hearing the evidence relating to the matter in controversy, and making such personal inspection and independent investigation of the works * * * as they may desire as a Board."

It seems clear to us that the questioned resurvey was the very type of an "independent investigation" permitted by the agreement, and within the contingency therein contemplated. Prior to the resurvey the parties had produced their proof and announced they had nothing further to offer. The arbitrators concluded that the evidence received was insufficient to enable them to arrive at a "correct solution of the matter" and decided that an additional survey should be made to provide the data necessary to this end. In addition to the conferment by the agreement of the express right to proceed with the independent survey, it is to be recalled incidentally, that, except as to the question of the expense thereof, the parties acquiesced in the plan and agreed on the scope of the survey. Thus, plaintiff may not now successfully maintain that, in *ordering* the survey, the board deviated from its authority. Of course, as was indicated in our former opinion, this right to make an independent investigation did not give the arbitrators authority "to adopt the conclusions of outsiders who may be consulted, without a considered determination of their own upon the information so obtained." The coincidence that the award contained certain figures and statements exclusively derived from the report of the survey does not necessarily establish any violation of the foregoing principle, since the very purpose of the survey was to secure engineering data not covered by the evidence theretofore introduced by the parties. In the nature of the problem the information to be devel-

oped by the ministerial processes of the survey would be expressed in precise and definite mathematical terms. Having satisfied themselves that the survey was conducted in accordance with acceptable engineering standards, as the evidence shows they did, it would be strange, indeed, if the pertinent computations and conclusions of the survey were not accepted by the arbitrators as factors in making their decision. In this connection the record discloses that in addition to conferring with Stiefel and his staff concerning the computations and results of the survey, the arbitrators consulted with the engineers of both parties and in the process allowed a credit to plaintiff on the basis of engineering data furnished by its engineers.

As to the second contention, supra, relating to its right to be present at hearings and to notice thereof, plaintiff argues that the data procured as a result of the survey was evidence, and that Stiefel and his staff thus were no more than witnesses; consequently, it is said, the conferences between them and the board in reality were hearings at which, under the above quoted provisions of the agreement, plaintiff was entitled to cross-examine witnesses and introduce rebuttal evidence. Basically, we believe this contention is not tenable. The measurements made during the survey and the computations based thereon were a purely ministerial phase of the "independent investigation" permitted by the terms of the submission. Clearly, under the agreement, as plaintiff concedes, if the arbitrators personally had made the survey and computations, the result properly could have been adopted by them without notice to the parties or a hearing or examination by them. We are unable to understand how a different situation is attained by the simple circumstance that the board, instead of performing this ministerial operation itself, employed the professional assistance of others in securing the needed factual data. In connection with this point, plaintiff additionally argues that by an ex-

press arrangement had in the course of the hearings, it was entitled to submit additional evidence relative to the extent of the excavation on the canal. This contention is based on a rather extended colloquy which took place between the arbitrators and various counsel for both parties on April 17, 1936, the day on which the final hearing was concluded, in the course of which both parties announced that they had concluded their case. Plaintiff asserts, as its construction of what was said, that either party, as a matter of course, would have the privilege of attending, and taking part in, any further hearings concerning matters which might develop from the inspection of the work or the investigation, and argues that the Stiefel survey, which at that time had not been ordered, was within this privilege. Defendant contends, as the board evidently believed to be the understanding, that all the evidence except engineering data had been presented, and that the hearings were concluded unless the board itself called for additional testimony, which it never did. As might be expected from the variety of the views expressed, both sides are able to point to isolated language in the transcript of the arbitration proceeding which supports their position. However, in our view, it must be considered that the board was authorized to adjudge questions relating to its procedural conduct, and we find nothing in the record which would warrant our disturbing the finding of the trial court that the plaintiff in no particular was denied the full opportunity to be heard which was accorded by the agreement.

On the first submission (Item 2 §1), with respect to the tunnel construction, the defendant claimed: A. For the expense of the removal of sloughed and caved material (overbreak) allegedly occasioned by the refusal of plaintiff's engineer to authorize permanent timbering, chargeable under the contract to plaintiff, where proper engineering and construction practice required, the sum of $30,106.35; B. For overrun of concrete and lining tun-

nel in caved areas, $15,647.00; C. For rubble packing and backfill in lieu of concrete, $3,560.37. The second claim under tunnel construction (Item 3, §1) for extra costs, allegedly arising from the failure of plaintiff to furnish plans in apt time, was for $2,500.

The board awarded $12,523.50 on claim 1-A; $13,287.27 on 1-B; $1,771.75 on 1-C and $1,004.00 on the second claim. The complaint alleged that the award of $12,-523.50 on 1-A was founded upon mistake and inadvertence, in that the arbitrators misconstrued a certain supplemental agreement between the parties and a letter from plaintiff to defendant (Ex. C) and that the allowance made was in opposition to the terms of the original construction contract. In support, contrary to the express findings of the arbitrators, plaintiff asserts that properly construed, Exhibit C did no more than require plaintiff to *furnish* the materials with which to fill the cavities caused by caving or sloughing and did not place upon it the burden of the *cost* of the removal of the sloughed materials, or the expense of placing refills in the cased area. In a considerable degree the argument turns on the meaning to be accorded the expression "take care of" used in Exhibit C.

In our opinion, as was the view of the trial court, this contention is dissonant from the general rule that arbitrators "are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either." See, *Wilson v. Wilson*, 18 Colo. 615, 34 Pac. 175, and *Ezell v. Rocky Mountain Co.*, 76 Colo. 409, 232 Pac. 680. "This is the reasonable view, for a contrary holding would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally. It is well stated, in support of this rule, that courts should be careful to avoid a wrong use of the word 'mistake,' and should not, by making it synonymous with mere error of judgment, assume to

themselves an arbitrary power over awards." 3 Am. Jur., p. 968, §147. The latter sentence is based on the language of the opinion in *Burchell v. Marsh,* 17 How. (U. S.) 344, 15 L. Ed. 96, which would seem to point to the fallacy in plaintiff's instant contention. On this subject it is said in 6 C.J.S., p. 251, §105(a): "Ordinarily an award is not vitiated or rendered subject to impeachment because of a mistake or error of the arbitrators as to the law or facts, unless it results in a failure of intent or breach of authority or is so gross or palpable as to establish fraud or misconduct." Our observations in the opinion in *Empson Packing Co. v. Clawson,* 43 Colo. 188, 95 Pac. 546, are consistent with the foregoing statement. Uniformly, such exceptions to the general rule as have been recognized are concerned with palpable mistakes, not in matters upon which the arbitrators exercised their judgment, but mistakes which misled or deceived them so that the award did not in fact represent their judgment upon the matters submitted. No such condition is shown to have attained here. This view of the law is fortified by our code, section 320, chapter 27, '35 C.S.A., which provided: "Whenever it shall appear upon the trial of an action at law, or in equity, or in any legal proceeding, in or before any court of competent jurisdiction, that the subject matter of such action, or proceeding, or any part thereof, or the defense thereto, or any part thereof, has been submitted to and decided by arbitrators, according to the terms of this act, such matter so arbitrated shall be held to have been adjudicated and settled, and not open, either directly or indirectly, for review; but this shall not be construed to prevent an adjudication by arbitrators from being impeached and set aside for fraud or other sufficient cause, the same as a judgment of a court of record, nor to prevent a party from relief, on the ground of mistake, inadvertence, surprise or excusable neglect, as in case of other judgments, orders or proceedings of the court." Considering the well es-

tablished basis of relief from judgments on the grounds of "mistake, inadvertence, surprise or excusable neglect," it is quite evident that a mere assertion that the finding of the arbitrators was contrary to the law and evidence, as is the real import of plaintiff's specifications, does not bring the case within the categories of tolerance quoted. Rather, it would seem, the contention more nearly falls within the statutory prohibition that a "matter so arbitrated shall be held to have been adjudicated and settled, and not open, either directly or indirectly, for review."

■ As will appear, the foregoing legal considerations generally preclude consideration on the merits of plaintiff's contentions with respect to the award of interest and alleged misconstruction by the board of the original contract in its allowance to defendant in both the canal and tunnel controversies. Concerning the allowance of interest to defendant, counsel for plaintiff in their briefs say: "We respectfully submit that this portion of the award is not based upon any claim submitted to the arbitrators by the agreement between the parties; that the arbitrators not only made a mistake in fact, but a mistake in law, in rendering any sum whatever to the defendant as interest; and that the award for interest is contrary to the board's own findings as to what constituted liquidated and unliquidated claims; and finally that it is contrary to the advice of Judge Alter who was authorized by both parties to advise the board on this important question, and whose findings, incidentally, were kept secret from the plaintiff until in March, 1940."

The circumstance that defendant's statements of claim incorporated in the arbitration agreement, concluded with a demand for "Interest at six percent on all items on above claims found to be due us," disposes of the intimation that the interest issue was beyond the terms of the submission. As a matter of fact, the record and evidence disclose that during the arbitration the parties

were in sharp disagreement, not as to whether the issue was included in the submission, but with respect to what interest was allowable, and briefs arguing their respective theories of the law were presented to the board. Thereafter, seemingly dissatisfied with this presentation, the board requested that it be allowed the advice of a disinterested attorney upon the subject and both parties agreed that Judge Wilbur M. Alter might serve in this capacity. In pursuance, Judge Alter conferred with the board and submitted his answers to certain written interrogatories propounded by it, no copies of either of which were furnished the parties. Strangely enough, in view of its previous contention hereinabove mentioned, that the board fatally transgressed in following the report of the engineer Stiefel, plaintiff argues that the board erred in not following the legal advice of Judge Alter on the interest question. At the trial the arbitrators testified that they thought the allowances made were consistent with Judge Alter's opinion. Whatever the situation may be in this respect, it is quite apparent from what has been detailed, that by the objection in consideration plaintiff seeks to impeach the award because of an alleged mistake or error of the arbitrators as to the law and facts. As hereinabove has been determined, this is not permissible; nor, considering that the parties agreed that Judge Alter might act as private legal advisor for the board on this question, are we able to perceive how any duty devolved upon the board to furnish the parties or either of them reports of their consultations with him.

As another ground for reversal plaintiff specifies that the court erred in admitting certain testimony of the arbitrators in which it is said they attempted to clarify and explain the language used in their award. Under our view, the questioned evidence was not intended to vary, or add to, the terms of the award nor accomplish such; rather, it was directed to what took place before the arbitrators, what was in controversy.

and what matters entered into the decision, and so was properly received. 6 C.J.S., pp. 283, 284, §§131(c), 131(d).

The judgment is affirmed.

MR. JUSTICE HILLIARD dissents.