### WRIGHT LUMBER CO. et al. v. HERRON et al.

No. 4492.

United States Court of Appeals
Tenth Circuit.

Oct. 22, 1952.

Hal Welch, Hugo, Okl. (George T. Arnett, Idabel, Okl., and Shaver, Stewart & Jones, Texarkana, Ark., on the brief), for appellant.

Tom Finney, Tulsa, Okl., and Robert L. Hert, Stillwater, Okl., for appellees.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

This is an appeal from a judgment vacating an arbitrators' award and granting a permanent injunction enjoining appellants from going upon appellees' land and removing timber therefrom.[1]

The essential facts in the case are these. The Herrons owned approximately 20,000 acres of timber land in McCurtain County, Oklahoma. So far as material, a written contract was executed by the parties March 16, 1948, in which the Herrons agreed to sell timber from designated portions of the tract and Wright agreed to purchase the same. In addition Wright also agreed to cut the timber in the manner as provided in the contract. The contract gave the Herrons the right of cancellation after the first year upon payment of $2,500 as liquidated damages. It also contained an arbitration provision providing that in the event of disagreements or differences between the parties in relation to the agreement or arising thereunder, whether as to construction or operation thereof or the respective rights and liabilities thereunder, such disagreements should be referred to three arbitrators to be selected as provided therein and that an award in writing signed by any two of the three arbitrators should be final and binding upon the parties. The parties operated under this agreement with written modifications thereof on June 16, 1948, November 6, 1948, and July 28, 1949. All these supplemental agreements provided that the original agreement should remain unchanged except as provided in the supplements thereto. Since the question

presented for determination arose under the supplement of July 28, 1949, its provisions relating to the original agreement are set out verbatim in Footnote 2. None of these supplemental agreements contained any provision dealing with the rights of cancellation.

The supplemental agreement of July 28, 1949, gave Wright the right to cut timber from 3,000 acres not included in the original agreement and provided that Wright would "be permitted to start a second cycle of cutting on January 1, 1952, on lands which were cut over under said above Timber Sale Agreement in 1948 and later." On October 26, 1951, the Herrons served notice of cancellation and to terminate the contract. The notice referred to the original contract and to the modifications thereof and notified Wright that it was cancelled because of his breach in refusing to cut the hardwood timber as required therein and because of its failure to otherwise comply with the terms and conditions of the contract. The notice also stated that "In case you do not agree that you have breached said contract such disagreement or difference is hereby referred to three arbitrators under the provisions" of the contract "entered into on the 16th day of March, 1948." It notified Wright of Herrons' selection of an arbitrator and requested it make selection of its representative "in order that said arbitrators so appointed may proceed to act under the provisions of said Article 12 that such dispute and disagreement as may exist between the parties as to your breach of said contract, aforesaid, may be determined and a decision made." It notified Wright further that in the event the decision should be in Wright's favor, then in that event and in the alternative "you are notified that said contract is terminated under the provisions of Article 11 of the agreement entered into on the 16th day of March, 1948."

Upon receipt of this notice, Wright served a written notice of appointment of

1. Appellants will be referred to as "Wright" and appellees will be referred to as "the Herrons".

2. "There shall be no changes in the original agreement or supplementary agreements to the original heretofore executed by both parties except as specifically changed hereunder. All other points as previously agreed and entered into in writing by both parties shall remain in effect."

an arbitrator. The notice denied that Wright had violated its contract and charged Herrons with violation of their contractual obligations. It stated that "you have violated the terms and conditions of your written contract with them and with it, the Wright Lumber Company.

"And that you, Herron Industries, have falsely and *fraudgently* caused your agents, servants and employees to over scale all of the sawlogs and trees out for manufacture by the Wright Lumber Company so that the Wright Lumber Company have overpaid you and that the Wright Lumber Company will submit to the arbitrators for their decisions the amount of the over charges that they have paid you for said logs and trees scaled by *your* and will submit to the arbitrators all matters of differences that have arisen between you and the Wright Lumber Company."

The two arbitrators chosen by the parties selected a third arbitrator and, after hearings, they made findings of an award. The board made a finding that three propositions had been submitted; first, whether Wright had breached its contract, second whether Herrons had breached their contract and, third, whether Herrons had the right to cancel the contract under Article 11 of the agreement of March 16, 1948. Sikes, the arbitrator selected by Wright, and Bounds, the third arbitrator, agreed that Wright had not breached its contract and that the Herrons had. Hendrix, the arbitrator selected by Herrons, disagreed. As to whether there was a right of cancellation, Sikes and Bounds were of the opinion that the agreement of July 28, 1949, was a new agreement between the parties insofar as the second cycle of cutting was concerned and that Article 11 of the agreement of March 16, 1948, was carried forward by reference into the contract of July 28, 1949, but that under the one year delay condition in Article 11, which postponed its operation for one year, they concluded that Herrons could not exercise their right of cancellation until one year after the commencement of the second cycle of cutting. Hendrix concluded that the cancellation provision contained in Article 11 of the agreement of March 16, 1948, was in full effect and that Herrons had the right to cancel the agreement between the parties at any time. While the majority of the arbitrators agreed that Herrons had violated their contract and that loss had resulted to Wright, they reported that they were unable to agree on the amount of damages arising therefrom.

After the arbitrators had made their award, finding that Wright was guiltless and that the Herrons had breached their contract, Wright re-entered on the land and started further cutting operations. Herrons thereupon instituted this action to vacate the award of the arbitrators and to enjoin the defendants from entering upon the lands of the plaintiffs and from cutting and removing timber therefrom.

Complaint is made of the court's conclusion that the third proposition with respect to Herrons' right to cancel the contract under Article 11 was not submitted to the arbitrators and that the arbitrators erred in concluding that it was submitted to them for determination. It is well established that the jurisdiction to make awards is limited to disputes expressly submitted for arbitration.[3] So also it is equally well settled that one who attacks the legality of an award has the burden of sustaining such attack.[4] We think appellees sustained this burden and agree with the trial court's conclusion that proposition three was not submitted to the arbitrators for determination. The Herrons made a written propo-

3. Swisher v. Dunn, 89 Kan. 412, 131 P. 571, 45 L.R.A.,N.S., 810; Evans v. De Spain, Tex.Civ.App., 37 S.W.2d 231; Mutual Benefit Health & Acc. Ass'n v. United Cas. Co., 1 Cir., 142 F.2d 390; Texoma Natural Gas Co. v. Oil Workers, I. U., Etc., D.C., 58 F.Supp. 132; Wigmore, Evidence (2d ed.), § 2358.

4. Parrish v. Higinbotham, 39 Or. 598, 65 P. 984; Thatcher Implement & Mercantile Co. v. Brubaker, 193 Mo.App. 627, 187 S.W. 117; American Almond Prod. Co. v. Consolidated Pecan Sales Co., 2 Cir., 144 F.2d 448, 154 A.L.R. 1205; 3 Am.Jur., Arbitration and Award, § 177; 6 C.J.S., Arbitration and Award, § 130, p. 281.

sal for arbitration, setting out the violations charged against Wright. All of these charges related to violation of contractual obligations. The written proposal specifically stated that they requested that such alleged contractual breaches should be submitted to arbitration and requested the selection of an arbitrator, as provided for in Article 12, so "that such dispute and disagreement as may exist between the parties *as to your breach of said contract*,[5] aforesaid, may be determined and a decision made." Upon a receipt of this notice, Wright, likewise in writing, made a counter-accusation and demand for arbitration. It denied all charges of contractual violations and made counter-charges of breaches of the contract against Herrons. Wright made no reference to the right of cancellation. These two writings determined the scope of inquiry by the arbitrators and, unless there was a subsequent submission of additional matters of dispute, they were limited in their deliberations to the subject matter set forth therein. By the introduction of these two written proposals, the Herrons met the burden resting upon them to establish that the submission did not include the question of the right to cancel the contract. There is no evidence in the record which would sustain a finding that thereafter any additional question was submitted for arbitration.

Appellant Wright takes the position that the contract of July, 1949, constituted a separate and independent contract, or since in any event it provided for a second cycle of cutting beginning January 1, 1952, if the right of cancellation under Article 11 was imported into the supplemental agreement by implication, the exercise thereof was likewise postponed for one year after the commencement of the second cycle of cutting.

The trial court correctly concluded that the contract of July 28, 1949, was but a supplement to the original contract and that the original contract stood unimpaired in all respects except as specifically modified by the supplement. There is evidence in the record that the right to additional cutting on the original acreage, as provided in the July, 1949, supplement, was to enable Wright to fulfill and complete cuttings required under the original contract. At the time the July, 1949, supplement was made a part of the contract, the right of cancellation existed. The supplement specifically provided that the original contract (meaning the rights and obligations thereunder) remained unimpaired except as specifically changed in the supplement. The supplement made no reference to cancellation or the postponement of the existing right of cancellation. If it had been intended that granting an additional five years to cut over the original acreage should postpone the right to cancel until after the first year thereof, it should have so stated.

Affirmed.