**GADDIS MINING COMPANY, a Colorado corporation, Plaintiff,**

v.

**CONTINENTAL MATERIALS CORPORATION, a Delaware corporation, and Continental Uranium Company of Wyoming, a Wyoming corporation, Defendants.**

**Civ. No. 4438.**

United States District Court
D. Wyoming.
Aug. 9, 1961.

A. G. McClintock, Cheyenne, Wyo., Raymond J. Gengler, John David Sulli-van and Fred M. Winner, Denver, Colc., and Walter C. Urbigkit, Jr., Cheyenne, Wyo., for plaintiff.

Carleton A. Lathrop, of Lathrop, Lath-rop & Tilker, Cheyenne, Wyo., and Fred A. Deering, Jr., of Gorsuch, Kirgis,

Campbell, Walker & Grover, Denver, Colo., for defendants.

KERR, District Judge.

This controversy is the outgrowth of plaintiff's sale of uranium properties in Fremont County, Wyoming, to defendants, the value of the purchase price of which was not readily ascertainable. It it a diversity action brought to recover such purchase price allegedly due and owing plaintiff by defendants. By the purchase agreement the purchase price was to be calculated on the basis of *the net value of the ore developed* under the terms of the agreement. The arbitration award determined that the net value of the ore developed under the terms of the purchase agreement was $2,106,662.34. Prior to the trial the parties stipulated that if the award were upheld plaintiff would be entitled to $192,224.20 as of March 31, 1961. Defendants deny owing such sum. They assert that the arbitrators overestimated the net value of ore developed, and contend that the arbitration award is invalid.

To determine whether or not the arbitration award is valid this court is called upon to construe the Purchase Agreement dated July 3, 1956, the Arbitration Stipulation dated May 27, 1958, the Agreement with the E. J. Longyear Company dated May 22, 1958, but as a matter of fact not executed until after May 27, 1958, the Final Arbitration Award dated April 11, 1960, and the Mortgage dated July 3, 1956, in which Continental is the mortgagor and Gaddis is the mortgagee.

It is sufficiently clear to identify the plaintiff-seller as "Gaddis" and the defendants-buyers as "Continental". Gaddis and Continental executed the purchase agreement in Denver, Colorado, on July 3, 1956. The purchase agreement specified the exploratory program in which Continental was to engage to discover the ore reserves in the property to be purchased. It was agreed that the purchase price would be 65% of the *net value of the ore developed by the drilling program*. Appendices attached to and made a part of the purchase agreement describe the exploration to be conducted by Continental, and the formula for calculating the net value of the ore developed therein. Phase "A" of that program was carried out by Continental, on the basis of which certain payments were made to and accepted by Gaddis. Friction developed, however, at the close of Phase "B" of the exploratory work in which less ore was proven than had been proven in Phase "A". Pursuant to the contract Continental submitted to Gaddis its determination of the net value of the ore developed. By letter dated December 18, 1957, Gaddis protested Continental's determination of the net value of ore developed, claimed that such determination was in error, and specified the nine errors which it claimed existed in Continental's determination. Subsequently Gaddis invoked the arbitration procedure of the purchase agreement, which he had a right to do. It provided that arbitrators would make a determination of the issues in dispute and that such determination would be *conclusive and binding on the parties*.

On May 27, 1958, the parties executed the arbitration submission in the manner provided by Colorado law. They identified the dispute as being with respect to the determination of the net value of ore developed; they named the arbitrators and stated that the arbitration proceedings were to commence on May 26, 1958, at 11:00 a.m., in Grand Junction, Colorado. They agreed that the arbitrators would issue a tentative award to which the parties could submit their objections. Deciding any objections, the arbitrators were thereupon to issue their final award. Paragraph 4 of the Stipulation contains the following provision: "Continental and Gaddis will submit to the Arbitrators for their decision the question: 'What is the "net value of ore developed" under the provisions of the Agreement'?" In paragraph 7 the parties specify what facts and information they shall submit to the Arbitrators.

The third written agreement pertaining to the arbitration of the parties' dis-

pute is that between Gaddis and Continental and the E. J. Longyear Company dated May 22, 1958. This is a material document in view of defendants' contention that the arbitration award is invalid because the arbitrators were guilty of misconduct in depriving Continental of a fair hearing and because they improperly delegated their responsibilities. Under the provisions of this agreement the arbitrators were authorized to employ the services of the geologists or engineers from the Longyear personnel "to recalculate the ore reserves from the drilling data submitted and *develop other studies of drilling data which would be pertinent to establish final interpretations of the drilling results * * *.*"

When the final award of the arbitrators was issued on April 11, 1960, Gaddis filed it with the Clerk of the District Court, Mesa County, Colorado, and, pursuant to Rule 109, Rules of Civil Procedure of Colorado, judgment was entered thereon ordering defendants to pay plaintiff $1,056,058.90. At the instance of Continental the Colorado Supreme Court will, in time, review that judgment on writ of error in which the procedural aspects of and not the merits of the arbitration award are being questioned.

■ During the trial I challenged the diversity jurisdiction of this court and its jurisdiction over the subject matter of the controversy. Upon inquiry into the facts upon which the alleged jurisdiction has been invoked, it is my opinion that the requirements of 28 U.S.C.A. § 1332 as amended, are satisfied. Gaddis Mining Company is a Colorado corporation and the defendant corporations were organized in Delaware and in Wyoming. The fact that Continental has an office in Grand Junction, Colorado, does not defeat the diversity of citizenship of the parties as its overall corporate activity and principal place of business are in Wyoming. The particular facts indicate unequivocally that its actual business is conducted and transacted in Fremont County, Wyoming. Colorado Interstate Gas Co. v. Federal Power Commission et al., 10 Cir., 142 F.2d 943, affirmed 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206, rehearing denied 325 U.S. 891, 65 S.Ct. 1082, 89 L.Ed. 2004; Kelly et al. v. United States Steel Corporation et al., 3 Cir., 284 F.2d 850; Scot Typewriter Co., Inc. v. Underwood Corp., D.C.N.Y., 170 F. Supp. 862; Mattson et al. v. Cuyuna Ore Company, D.C.Minn., 180 F.Supp. 743; Wear-Ever Aluminum, Inc. v. Sipos, D.C. N.Y., 184 F.Supp. 364.

With respect to this court's jurisdiction over the subject matter of this controversy, it is important to note that the contracts between the parties were executed in Colorado and that the Arbitration Agreement between Gaddis and Continental properly conforms to Rule 109 of the Colorado Rules of Civil Procedure. That Rule requires *that the parties agree to abide by the award of the arbitrators.* It provides that "the award may be filed with the clerk of the district court, as a basis of a judgment, and that an execution may be issued for its collection".

■■ It has been stated that an arbitration act is remedial and non-exclusive and that the right to sue to recover an arbitration award is not thereby abolished. Hartmann Coal Mining Co., Inc. v. Hoke et al., D.C.Pa., 157 F.Supp. 313. I agree with this principle, and therefore look to the law of Colorado to ascertain when and under what circumstances the courts may review an arbitration award.

The authority of a court to review the award of the arbitrators is limited to the causes set out in Rule 109 of the Rules of Civil Procedure of Colorado. People ex rel. Kimball v. Crystal River Corporation et al., 131 Colo. 163, 280 P. 2d 429. Paragraph (g) of the rule provides that an arbitration adjudication may be "impeached and set aside for fraud or other sufficient cause, the same as a judgment of a court of record", and relief may be had "on the ground of mistake, inadvertence, surprise or excusable neglect, as in the case of other judgments, orders or proceedings of the court". There is no evidence in the record of this case of any fraud practiced upon the arbitrators, nor of any accident or mistake which deceived or misled

864

them, "so that the award did not in fact represent their judgment upon the matters submitted". Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc., 112 Colo. 155, 147 P.2d 828, 835; Wilson v. Wilson, 18 Colo. 615, 34 P. 175.

In Colorado, an arbitration award is not subject to review in the courts merely because one of the parties is dissatisfied with it, or solely for mistake in either the law or fact. Western Oil Fields, Inc. v. Rathbun, 10 Cir., 250 F.2d 69; People ex rel. Kimball v. Crystal River Corporation, supra; Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc., supra. Fraud or misconduct of an arbitrator are the only grounds for setting aside an arbitration award. Western Oil Fields, Inc. v. Rathbun, supra; Noffsinger v. Thompson, 98 Colo. 154, 54 P.2d 683; Empson Packing Co. v. Clawson, 43 Colo. 188, 95 P. 546. In the Western Oil Fields case the Court upheld an arbitration award and found that it was not void for uncertainty in the specific description of the property and in the terms of the warranty to be given. There is, therefore, sound precedent for my conclusion that this court has jurisdiction of the subject matter of this suit brought for the enforcement of the arbitration award. The misconduct of the arbitrators of which Continental complains is that they (a) improperly delegated their responsibilities, (b) deprived Continental of a fair hearing, and (c) exceeded their jurisdiction.

I am in complete accord with the principle that the arbitration award must be that of the arbitrators in order to withstand the charge of invalidity for improper delegation of authority. It must not represent the conclusion of an outsider to the arbitration who has not been selected by the parties to adjudicate their dispute. Had the arbitrators adopted the opinions or conclusions of a third party, blindly or contrary to their own convictions, they would have been censurable for misconduct sufficient to void their award. Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc., 105 Colo. 49, 94 P.2d 1090; 112 Colo. 155,

147 P.2d 828; Harley Co. v. Barnefield, 22 R.I. 267, 47 A. 544.

Extrinsic evidence is admissible to prove the misconduct of arbitrators. The parties agreed to the use of the employees of the E. J. Longyear Company to assist the arbitrators. Continental now attempts to show that at least one of such employees did all the work and arrived at the final conclusions. As aforesaid, the Agreement with the Longyear company specified the use to be made of its employees. There is no convincing evidence that either the employees or the arbitrators acted beyond the terms of that agreement, or that the judgment of the assistants was substituted for that of the arbitrators, or that the arbitrators adopted the conclusions of the assistants without concurring therein. Quite to the contrary. In the report accompanying their award, the arbitrators averred that the Longyear assistants worked under their immediate direction and supervision. The arbitrators assigned their work and conferred with them. The acts of discretion and interpretation were done by the arbitrators; and the decisions, conclusions and determinations were made by the arbitrators. They wrote their report and issued their award. The evidence is compelling that the arbitrators did not violate their oath and that they did not improperly delegate any of their judicial functions or responsibility. Their award cannot be set aside, therefore, on the basis of this charge.

I cannot accept Continental's theory that the award is invalid because it was denied a fair hearing and an opportunity to cross examine the experts who assisted the arbitrators pursuant to the E. J. Longyear agreement. These privileges were not contracted for by the parties, and, under the circumstances, Continental is not entitled to them as an absolute fundamental right. The determination of the net value of ore developed under the agreement was not a matter to be decided by the arbitrators upon the submission of evidence and the examination of witnesses, as might be so in an

appraisement proceeding. This is not a case where the arbitrators would not know essential facts without a hearing to receive evidence. The nature of the dispute and the character and quality of the arbitrators selected and of the experts employed by the arbitrators sufficiently justify the inference that no hearing was required or expected to enable the arbitrators to adjudge the dispute. See, Continental Ins. Co. v. Garrett, 6 Cir., 125 F. 589; City of Omaha v. Omaha Water Company, 218 U.S. 180, 30 S. Ct. 615, 54 L.Ed. 991.

■ The ministerial operation of procuring data and making computations whether performed by the arbitrators or their expert assistants does not require notice to be given and a hearing held for the purpose of confrontation, refutation, or cross examination. Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc., 112 Colo. 155, 147 P.2d 828. As a matter of fact, both parties were heard at length at the meeting with the arbitrators when the dispute was submitted to them. Additionally, they submitted briefs in support of their contentions. Their rights were fully protected. Rule 109, R.C.P.Colorado, was satisfied.

The final issue to be decided is whether or not the arbitrators exceeded their jurisdiction.

Continental bases its contention on the ground that the arbitrators substituted their own data developed by the "area under the curve" method for that which the parties developed by the "maximum deflection" method and submitted to them. It is true that in the absence of objection by either party, the data which they submitted to the arbitrators pursuant to the arbitration stipulation appears to be "agreed-upon data". This being so, defendants urge the application of the rule that the arbitrators may decide only the issues in dispute and therefore that they had no authority to decide not to use the "agreed-upon data". This contention would be more persuasive had the arbitrators been required to use that "agreed-upon data" and had they been restricted to its use.

The arbitrators' construction of the submission and their interpretation of their duties is not subject to attack. The following statement which prefaces their report explains fully, explicitly and logically their approach to the dispute which they were called upon to arbitrate:

"The major part of the drilling carried out on the Seismic uranium property, during the course of the exploration phases, was of the non-core type. The holes were logged with a gamma-ray device. Few core holes, from which actual ore samples could be obtained for chemical analysis, were drilled. Likewise some dust samples, of questionable value, were collected for analysis. *Consequently the calculations of the net value of the ore developed must, of necessity, be based largely upon the interpretation of the gamma-ray logs of the various holes.* These logs were provided to the arbitrators. The arbitrators had no part in any phase of the exploration project, which included the laying out of the holes, the drilling program, the taking of the logs, cores, or dust samples, or the chemical analysis of such samples. The basic data obtained during these various phases of the program were all supplied to us by the parties to the dispute.

*"In interpreting gamma-ray logs, two methods are in general use,* as follows:

"(1) The maximum deflection method.

"(2) The area method." (Emphasis added.)

The report analyzed the two methods and their applicability to the factual situation in the question before them. In the opinion of the arbitrators the area or area under the curve method was the superior method and necessary one to be used in order to resolve the dispute. Arbitrators have the authority to decide not only the question precisely expressed in the Stipulation, but also the questions which, in their opinion, necessarily arise therefrom. Twin Lakes Reservoir & Ca-

nal Co. v. Platt Rogers, Inc., supra. The conclusion of the arbitrators is expressed as follows:

"The area method is considered to be the standard analytical procedure in the industry, and is also recommended by the manufacturer of the probing instrument used in this investigation. Because of its superiority over the maximum deflection method, we have adopted it for use in this arbitration."

■ The arbitrators are the final judges of the law and fact, and the court will not substitute its judgment for that of the arbitrators. Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc., supra, and cases cited therein. Here we are dealing with a highly scientific problem on which experts alone are qualified to make a determination. A clear opinion or report of the arbitrators "tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424. A review of the arbitrators' report persuades me that it was painstakingly done and the parties admit that a sum in excess of sixty-five thousand dollars was expended on the proceedings.

■ No instructions were given to the arbitrators concerning any method to be used to determine the proper correlation factor. Absent fraud or bad faith the arbitrators' determination is final and not subject to review. Berry v. Asphalt Paving Co. et al., Colo., 360 P.2d 980.

■ Despite the plain, unambiguous carte blanche authority contained in the contracts Continental now insists that it was the mutual intention of the parties that the arbitrators be limited to the method used by Continental or to the "agreed-upon" facts. In Paragraph 2 of the E. J. Longyear contract Dr. Merritt, a Longyear employee and one of the arbitrators, is given the power to exercise his discretion "to recalculate the ore reserves from the drilling data submitted and develop other studies of drilling data which would be pertinent to establish final interpretations of the drilling results * * *." The Court will not alter or inject provisions in the contracts of the parties. Paragraph 7 (a) of the Stipulation recites that "The parties will submit to the Arbitrators the following: * * *" and there are then listed the various data. When they drafted the stipulation they did not add the words "which they may use" or "which they shall use in the determination of the question submitted to them". Neither the parties nor the court may now add either of these phrases. Empson Packing Co. v. Clawson, 43 Colo. 188, 95 P. 546. Even in the agreement with the E. J. Longyear Company reference is made to the fact that the parties "will submit to the arbitrators all relevant data and matter which they have concerning the matters in dispute". This language does not dictate that such data and only such data shall be used by the arbitrators in reaching their decision.

Concerning the arbitration procedure the written instruments are unambiguous. Paragraph 3 of the purchase agreement provides that " * * * all points remaining in dispute shall be submitted [to the arbitrators] and their determination of the points remaining in dispute shall be conclusive and binding on both parties". Defendants would limit the arbitrators to arbitrate only the seven errors listed by Gaddis when he protested Continental's determination of the net value of ore developed and claimed that such determination was in error. If this were the intention of the parties, it is not so expressed in the question submitted to the arbitrators. Indeed, those seven "errors" were not included in the submission to the arbitrators. They appear only in the briefs of the parties which were prepared in accordance with the terms of the Stipulation and forwarded to the Arbitrators.

I have no quarrel with the authorities cited by defendants that a contract may be reformed to express the intention of

the parties when the written agreement varies with their intentions. Restatement, Contracts, Sec. 504 (1932). The application of this rule, however, is of little consolation to Continental as the evidence has not convinced me that the parties intended to instruct the arbitrators to use the data submitted to them and only that data, or to use only the maximum deflection method in arriving at the necessary computation of net value of ore developed, or to arbitrate just the seven errors listed by plaintiff in his letter objecting to Continental's determination of the net value of the ore.

Continental has the burden of proving its attacks on the validity of the arbitration award. Wright Lumber Co. et al. v. Herron et al., 10 Cir., 199 F. 2d 446. It has not sustained its attack. It is true beyond cavil that the jurisdiction of arbitrators is limited to those matters or questions submitted to them. Western Oil Fields, Inc. v. Rathbun, supra; Wright Lumber Co. v. Herron, supra, and authorities cited therein. The jurisdiction of the arbitrators to make the award of which Continental complains encompassed the broad question explicitly expressed in this language: "What is the 'net value of ore developed' under the provisions of the agreement?" The composition of a more all-inclusive question challenges the imagination. The arbitrators were asked to do just what Continental was required to do under the terms of the purchase agreement.

Seven disputes were not submitted to the arbitrators. By the stipulation the arbitrators were told that there was a "dispute * * * with respect to the determination * * * of said net value of the ore developed"; that the parties agreed to submit for arbitration "the dispute between Continental and Gaddis with respect to the determination of the net value of ore developed. * * *"; and that the question for their decision was "What is the 'net value of ore developed' under the provisions of the agreement?" The question posed in the Stipulation referred the arbitrators back to the purchase agreement which directed that the net value of the ore developed be determined "in accordance with Appendix D". This the arbitrators did. Their report, which accompanies the award, conforms to Appendix D, paragraph by paragraph.

For the foregoing reasons I find that the arbitration award is valid.