306 F.2d 952
 CONTINENTAL MATERIALS CORPORATION, a Delaware corporation,
and Continental Uranium Company of Wyoming, a
Wyoming corporation, Appellants,
v.
GADDIS MINING COMPANY, at Colorado corporation, Appellee.
 No. 6894.
 United States Court of Appeals Tenth Circuit.
 July 27, 1962, Rehearing Denied Aug. 30, 1962.
 
 Coleman Hayes, Oklahoma City, Okl. (Fred A. Deering, Jr., and Leonard M. Campbell, Denver, Colo., and Monnet, Hayes, Bullis, Grubb & Thompson, Oklahoma City, Okl., and Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., of counsel, on the brief), for appellants.
 Fred M. Winner, Denver, Colo. (Raymond J. Gengler and John-David Sullivan, Denver, Colo., and A. G. McClintock and Walter C. Urbigkit, Jr., Cheyenne, Wyo., on the brief), for appellee.
 Before PHILLIPS, LEWIS and HILL, Circuit Judges.
 LEWIS, Circuit Judge.
 
 
 1
 This is an appeal from a judgment entered by the United States District Court for the District of Wyoming allowing the plaintiff Gaddis Mining Company certain remedial relief within the State of Wyoming in aid of an arbitration award determined by the court to be valid and enforceable. Jurisdiction is based upon diversity of citizenship combined with the requisite statutory amount in controversy and error below is claimed only to the extent the judgment is premised upon the finding that the subject arbitration award is valid. The decision of the trial court, 196 F.Supp. 860, contains a comprehensive statement of the factual background and legal reasoning supporting the conclusion that the arbitration award is enforceable. We are in general accord with the views expressed by the trial court and to so affirm the judgment.
 
 
 2
 The dispute arose out of a purchase agreement dated July 3, 1956, whereby the appellant, Continental, was to buy and the appellee, Gaddis, was to sell uranium properties in Fremont County, Wyoming, for a price to be determined by the net value of ore developed upon exploration and production. The parties chose the purchase transaction rather than an operating agreement in order to effect tax advantages, but the purpose of the sale was to share the profits of production in exchange for exploration and operation by Continental. It was agreed that Continental's services should be valued at a price equal to 35 percent of the net value of the ore developed and that, therefore, Gaddis was to receive as a sales price 65 percent of such value.
 
 
 3
 The determination of the extent of the ore body capable of extraction and the grade of ore to be anticipated was to be made preliminarily by Continental, which was to conduct a one and one-half year exploration program. A procedure of protest and arbitration was provided in the event Gaddis disagreed with the determination of the net value of the ore developed.
 
 
 4
 Thus, by letter dated December 18, 1957, Gaddis claimed the error had occurred, specified nine errors in Continental's calculations, and finally invoked the agreement's arbitration procedures. On May 27, 1958, the parties entered into an arbitration stipulation, wherein they agreed that the arbitration proceeding should be held in accordance with the laws of the State of Colorado and submitted a single question for the decision of the arbitrators:
 
 
 5
 '4. What is the 'net value of ore developed' under the provisions of the (purchase) Agreement?'
 
 
 6
 The question was specifically answered by the arbitrators and thereupon and in accordance with the agreement and Colorado law, Gaddis filed the final arbitration award in Mesa County, Colorado, and judgment was rendered in the amount of $1,056,058.90.
 
 
 7
 The power to review, directly or indirectly, the decision of arbitrators is a limited one under Colorado law. Rule 109 of the Colorado Rules of Civil Procedure pertinently provides:
 
 
 8
 '(g) Arbitrated Matters Held Adjudicated; Except for Fraud, etc. Whenever it shall appear in any action that the subject matter of such action, or proceeding, or any part thereof, or the defense thereto, or of any part thereof, has been submitted to and decided by arbitrators, according to the terms of this rule, such matters so arbitrated shall be held to have been adjudicated and settled, and not open, either directly or indirectly, for review; but this shall not be construed to prevent an adjudication by arbitrators from being impeached and set aside for fraud or other sufficient cause, the same as a judgment of a court of record, nor to prohibit relief on the ground of mistake, inadvertence, surprise or excusable neglect, as in case of other judgments, orders or proceedings of the court.'
 
 
 9
 And it is of course fundamental that this court cannot disturb the judgment of the trial court unless based upon error in law or upon a finding of fact that it clearly erroneous.
 
 
 10
 In an effort to sustain its burden, Wright Lumber Co. et al. v. Herron, 10 Cir., 199 F.2d 446, Continental contends that the arbitrators exceeded their jurisdiction and takes issue in this regard with a somewhat equivocal statement in the trial court's opinion:
 
 
 11
 'The arbitrator's construction of the submission and their interpretation of their duties is not subject to attack.' 196 F.Supp. 860, 865.
 
 
 12
 Taken in its context it is apparent that the quotation does not signify the court's belief that the arbitrators have the power to determine their own jurisdiction, as appellant would read it, but rather that the court regarded the lucidity and thoroughness of the arbitrator's reports as convincing of their diligence and intellectual honesty in its preparation. Clearly, the decision of the arbitrators, if beyond their jurisdiction, has no more effect than a similar judgment by a court. See Skinner v. Davidson, Inc., 142 Colo. 423, 351 P.2d 872; 6 C.J.S. Arbitration and Award 80b(2).
 
 
 13
 It is well settled that the jurisdiction to make awards is derived from the agreement of submission, to be interpreted in accordance with the general principles of contract law, Wright Lumber Co. v. Herron, 10 Cir.,199 F.2d 446, and that, in the absence of express reservation, the parties are presumed to agree that everything, both as to law and fact, necessary to the ultimate decision is included in the authority of the arbitrators, Twin Lakes Reservoir & Canal Co. v. Platt Rogers, 112 Colo. 155, 147 P.2d 828.
 
 
 14
 Undoubtedly, in the negotiations between Gaddis and Continental held prior and preliminarily to the submission of their dispute to arbitration, both parties believed that the most effective method for determining the net value of ore in place was a method known in the industry as 'maximum deflection.' The arbitrators, however, adopted a second method, 'area under the curve,' and arrived at value higher than that claimed by Gaddis or admitted by Continental. In so doing, the arbitrators did not limit their reliance to data submitted to them by stipulation of the parties but made extensive independent search for pertinent information. We think the trial court correctly held that the arbitrators acted properly and within the authority of the contract of employment which provided for the appointment of a Dr. Merritt as an arbitrator and stated:
 
 
 15
 '2. If, in the opinion of Dr. Merritt after the meeting of May 25th, and after consideration of the statements and data submitted, it is deemed necessary to recalculate the ore reserves from the drilling data submitted and developed other studies of drilling data which would be pertinent to establish final interpretations of the drilling results, Longyear will furnish personnel necessary for this service under supervision of Mr. Rudolph C. Gebhardt pursuant to the terms of this agreement.'
 
 
 16
 Clearly, under the agreements it was necessary for the arbitrators to determine the correct method of calculation for the ore reserves. The mere fact that geologic logs, maps and data comparing samples were submitted by the parties as an aid to the arbitrators does not compel the conclusion that the arbitrators were restricted in their authority.
 
 
 17
 But Continental contends that if the arbitration stipulation does grant such broad authority, it was entered as a mistake and the court should grant relief by way of reformation of the contract. On this matter, the trial court found that 'Continental has failed to show that it was the victim of any mistake when it signed the arbitration stipulation.' In this long-fought battle, the positions of the parties appear to have varied with each skirmish, but the evidence and inferences are sufficient to prevent setting aside the findings as being clearly erroneous, Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. The arbitration contract provided for the development of other studies of drilling data and the employment of engineers to investigate the drilling results. The first draft of the arbitration stipulation contained restrictions upon the authority of the arbitrators, but the agreement as signed did not retain those restrictions which would limit the arbitrators to a single method of calculation and the use of data already developed. Both parties, by reason of meetings at which they had representations and by reason of the billings for services rendered, were or should have been aware that the calculations were being made on a theory other than that which they had formerly espoused.
 
 
 18
 Those billings, too, showed that an engineer named Rove was conducting much of the work in connection with the determination. The appellant thus complains that the arbitrators improperly delegated their responsibilities. Appellant was permitted lengthy cross-examination of Dr. Merritt, one of the two arbitrators, but failed to convince the trial court that the arbitrators had adopted the opinions and conclusions of Rove blindly and contrary to their own convictions. Dr. Merritt testified that although he relied largely on Rove's work, the award, as finally made, was his own. Since the arbitration agreements contemplate the employment of expert personnel, and the trial court found upon hearing the persons involved in the arbitration that the determinations were the independent determinations of the arbitrators in all instances, based upon their own skill and review of Rove's work, the evidence does not compel the conclusion of an abdication by the arbitrators. See Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc., 112 Colo. 155, 147 P.2d 828.
 
 
 19
 Appellants also claimed the right to cross-examine the technical employees of the arbitrators and, as in the Twin Lakes case, were denied. In that case the Colorado Supreme Court stated:
 
 
 20
 'As to the second contention, supra, relating to its right to be present at hearings and to notice thereof, plaintiff argues that the data procured as a result of the survey was evidence, and that Stiefel and his staff thus were no more than witnesses; consequently, it is said, the conferences between them and the board in reality were hearings at which, under the above quoted provisions of the agreement, plaintiff was entitled to cross examine witnesses and introduce rebuttal evidence. Basically, we believe this contention is not tenable. The measurements made during the survey and the computations based thereon were a purely ministerial phase of the 'independent investigation's permitted by the terms of the submission. Clearly, under the agreement, as plaintiff concedes, if the arbitrators personally had made the survey and computations, the result properly could have been adopted by them without notice to the parties or a hearing or examination by them. We are unable to understand how a different situation is attained by the simple circumstances that the board, instead of performing this ministerial operation itself, employed the professional assistance of others in securing the needed factual data. * * *' 147 P.2d at 833.
 
 
 21
 The trial court found that the prties never contemplated the formalities of a trial. 'This is not a matter to be decided by the arbitrators upon the submission of evidence and the examination of witnesses. The evidence clearly justifies the inference that no hearing was required or expected in order for the arbitrators to adjudge the matter in dispute.' The parties chose the arbitration procedure as superior to a court suit because of the expertise of the arbitrators; they recognized the need of technical assistance and provided for the empoyment of such; the whole issue depended upon the application of one or two methods of interpretation of physical data. It is true that in such a complicated science, there are bound to be areas of disagreement as to the application of theory and method, but it is apparent that this was the very reason the parties agreed to abide by the judgment of the arbitrators.
 
 
 22
 There is no evidence of misconduct by the arbitrators which would vitiate the award and the judgment of the trial court is affirmed.