WILSON, PLAINTIFF IN ERROR, v. WILSON, DEFENDANT IN ERROR.

1. ARBITRATION—FILING AWARD.

Where it is provided in the articles of submission to arbitrators that the award, when made, may be filed by the successful party with the clerk of the district court as the basis of a judgment, the necessity for so doing is obviated by the payment by the unsuccessful party of the amount awarded against him.

2. ARBITRATION—SUBMISSION.

In a statutory arbitration, the statute concerning awards must be considered as a part of the contract of submission, the same as though it had been inserted in the articles.

3. AWARD, EFFECT OF.

An award of arbitrators acting under the statute and within the scope of their authority is, as to matters of fact and law, as conclusive as the final judgment of a court of last resort.

4. AWARD, GROUNDS FOR SETTING ASIDE.

While, in the absence of statute, an award may be set aside for fraud, accident or mistake, it must be for fraud practiced upon the arbitrators, or for some accident or mistake by which they were deceived or misled.

5. AWARD, RATIFICATION OF.

A party who with the knowledge of all material facts complies with the requirements of an award, or accepts the benefits thereof, is precluded from demanding that it be set aside.

*Appeal to the District Court of Arapahoe County.*

ACTION to set aside award of arbitrators. Award made by Alfred Butters, Dennis Sheedy and Alva Adams. The two former were first selected by the parties. Afterwards, by consent, Governor Adams was called in as a third arbitrator upon two of the accounts submitted.

The parties to the suit are brothers, and are both wealthy. For a long time they were partners together in the cattle business. In this business certain differences arose between them, as the result of which the partnership was dissolved in the year 1877. These differences were at the time settled by arbitration. This arbitration resulted in favor of W. J. Wilson. The award was not satisfactory to A. D. Wilson, although he took no steps to have it set aside, but paid the amount found against him.

After dissolution of the partnership, and the arbitration of 1877, an agreement was made between the brothers with reference to the future support of their mother and her family. For some years these expenses were amicably settled between the brothers; after this no settlement was made, each paying as he saw fit, and a dispute having arisen over these expenses, led to what is termed a home account in the arbitration that afterwards followed, to set aside which, this suit was instituted by defendant in error. By the agreement to arbitrate, the arbitrators were to take into account all expenditures made by either brother, between the sixth day of December, 1877, and the date of the articles of submission, to wit, March 20, 1887.

In the year 1884, A. D. Wilson was a candidate for lieutenant governor. The second question submitted for arbitration is upon certain claims made by the defendant, W. J. Wilson, for money advanced for A. D. Wilson for campaign expenses. It is unnecessary to enter further into details of this account, as its correctness was expressly admitted upon the oral argument to this court.

The foregoing accounts were covered by one agreement of submission. A different agreement executed contemporaneously therewith, covers what is known as the herd account.

This account arose as follows :—The plaintiff and A. D. Wilson sold to Wilson & Tucker, a firm composed of a third brother, Robert G. Wilson, and L. R. Tucker, a certain herd of cattle and horses, and to secure about $50,000 of the purchase money Wilson & Tucker executed a chattel mortgage upon this property. Thereafter Wilson & Tucker became largely indebted to the Colorado National Bank, and the bank refusing to increase the indebtedness the plaintiff in error, William J. Wilson, at the request of Wilson & Tucker, became responsible to the bank for additional sums loaned and advanced by the bank, the whole amount of such sums, principal and interest, making a total of $26,574.96 ; and to indemnify William J. Wilson in becoming security for the payment of this sum Wilson & Tucker gave to the defendant, William J. Wilson, a junior chattel mortgage upon the cattle and horses purchased by them from the defendant in error, A. D. Wilson.

It is shown that Robert G. Wilson paid a considerable portion of said sum toward the support of the home of the mother, and that this amount was properly chargeable, one half to A. D. and the remainder to W. J. Wilson. The balance it is claimed was expended in and about the care and maintenance of the cattle and horses covered by said chattel mortgage, the remainder having been used by each of the firm in personal expenditures. The amount found by the arbitrators as having been expended by Robert G. Wilson, of this sum, in support of the mother and family, was $16,941.43, and the amount found by them as having been expended by Wilson & Tucker in the care and maintenance of the cattle and horses was $7,472.53. One half of the $16,941.43 was charged against the plaintiff A. D. Wilson, by the arbitrators, and the whole of the second item of $7,472.53. It is claimed that the latter item was properly chargeable to A. D. Wilson, under a verbal arrangement made between A. D. and the firm of Wilson & Tucker.

The arbitrators found that the plaintiff, A. D. Wilson, was indebted to the defendant, W. J. Wilson, upon the three

accounts in the sum of $20,705.48. This sum was made up as follows: $7,472.53, which was a part of the money borrowed by Wilson & Tucker of the bank, and used by them in the care of the cattle and horses; $8,470.71, which was also a part of the money borrowed of the bank by Wilson & Tucker, and was one half of the sum used by Robert G. Wilson in support of the mother's home; $2,125.74, which the arbitrators decided was due W. J. on the same account; $2,636.50, due from A. D. Wilson to W. J. Wilson, on the political account.

A. D. Wilson, against whom the award was made, immediately upon its rendition paid the amount to his brother W. J. He, however, objected at the time that the award was inequitable and unfair, and says in his testimony introduced in this proceeding, that he only paid the same in fulfillment of mutual promises made by the brothers that any award that should be made should be paid by the unsuccessful party.

The defendant in error in his complaint seeks to set aside the award for fraud, for insufficient evidence and for mistake of law and fact. Issues having been joined upon this complaint, evidence was taken before a referee, whose findings were in favor of the plaintiff. Thereupon a decree was rendered by the district court, setting aside the award, and ordering an accounting between the brothers. A judgment for costs was also entered and execution was ordered to be issued. To review this judgment the case is brought to this court.

Messrs. PATTERSON & THOMAS, for plaintiff in error.

Mr. L. S. DIXON and Messrs. ROSE & WALLING, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The arbitration was had under the statute at that time

in force.    This is apparent from the concluding paragraphs of the articles of submission.    In both instances, such articles provide as follows :—" and inasmuch as the statute requires that the following agreement shall be inserted in all articles of arbitration, it is further agreed that said award, when made, may be filed by the successful party with the clerk of the district court, as a basis of a judgment, and that an execution may be issued for its collection."

It matters not that the award in this case was not filed with the clerk of the district court.    .The necessity for so filing it was obviated by the plaintiff paying the amount awarded against him.

By the statute under which the arbitration was had, it is provided, among other things, as follows :—

" Sec. 7.    Whenever it shall appear upon the trial of an action at law, or in equity, or in any legal proceeding, in or before any court of competent jurisdiction, that the subject-matter of such action or proceeding, or of any part thereof, or of the defense thereto, or of any part thereof, has been submitted to and decided by arbitrators according to the terms of this act, such matter so arbitrated shall be held to have been adjudicated and settled, and not open, either directly or indirectly, for review."    Session Laws 1881, p. 59.

The agreement to arbitrate having been made under this act, it must be construed in reference to the terms of the statute.    In other words, the statute must be considered as a part of the contract of submission, the same as though it had been inserted in the articles providing for the submission. *Hepburn v. Jones*, 4 Colo. 98.

It therefore became necessary at the threshold of this case to determine the effect of this statute.    The decisions of the courts as to the circumstances that will justify the setting aside of an award in the absence of a statute are in hopeless conflict.    In some cases it has been held that extraneous evidence may be introduced to show a mistake of law or fact on the part of the arbitrators, although such mistake is not apparent upon the face of the award.    The tendency, however,

of many, and we think the better decisions, is to the effect
that an award of arbitrators should be placed upon much the
same plane as a final judgment, unless otherwise provided by
statute. In the leading case of *The Boston Water Power
Company v. Gray*, reported in 6 Metc. 131, Shaw, C. J., says,
" Their decision upon matters of fact and law, thus acting
within the scope of their authority, is conclusive, upon the
same principle that a final judgment of a court of last resort
is conclusive ; * * *," p. 165.   See also, *Burchell v. Marsh*,
17 Howard, 344 ; *Jocelyn v. Donnel*, 14 Am. Dec. 753, and
notes ; *Briley v. Underwood*, 41 Ga. 9 ; *Brown v. Green &
Noyes*, 7 Conn. 536 ; *The Ind. Cent. R. R. Co. v. Bradley*, 7
Ind. 49 ; *Brown v. Clay*, 31 Me. 518 ; *Ward v. Am. Bank*, 7
Metc. 486 ; *Rundell v. La Fleur*, 6 Allen, 480 ; *Hodgkinson
v. Fernie*, 3 C. B. N. S. 189.   Cockburn, C. J., in the latter
case says :—

" But the modern cases which have been cited certainly go
the length of deciding, that, unless there be something upon
the face of an award to show that the arbitrator has proceed-
ed upon grounds which are not sustainable in point of law,
the court will not entertain an objection to it."

Arbitration is favored by the law as a convenient mode of
adjusting disputes.   Parties after having selected their own
judges, as a general rule should be bound by the result.

The award in this case upon its face is not open to criticism,
and to give the statute any effect whatever, we must treat
the award as of the same sanctity as a final judgment of a
court of last resort.   To do less than this would be to over-
ride entirely the legislative act.

In this connection it is pertinent to consider the law with
reference to the impeachment of judgments by courts of
equity.   In the case of the *United States v. Throckmorton*,
98 U. S. 61, it is said :—

" There are no maxims of the law more firmly established,
or of more value in the administration of justice, than the
two which are designed to prevent repeated litigation be-
tween the same parties in regard to the same subject of con-

troversy ; namely, *interest rei publicæ, ut sit finis litium,* and *nemo debet bis vexari pro una et eadem causa.* * * * But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court ; a false promise of a compromise ; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff ; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat ; or where the attorney regularly employed corruptly sells out his client's interests to the other side—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing. * * * On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed."

In this case the district court went behind the award and substituted its judgment upon both the law and the facts of the case for that of the arbitrators. For instance, in his opinion the trial judge says of the herd account :—" Upon careful examination of the evidence, after hearing the elaborate arguments of counsel, I am unable to find that there is any testimony tending to prove that the plaintiff was legally or equitably obligated to pay the defendant the said sum of $7,472.53, which was used in the care and maintenance of the herd of cattle."

The court regarded this as the most serious error committed by the arbitrators, and found it sufficient of itself to warrant a decree annulling the award. Giving to the award the ef-

fect of a judgment, and this action of the district court is not sustained by either reason or authority. Moreover, in this country, arbitrators are not bound by positive rules of law. And aside from this, by the articles of submission it clearly appears not to have been the intention of the parties to submit this account to the test of the strict rules of law or principles of equity by which the courts are governed, it being expressly stipulated that " it should be determined and adjudged in a peaceful and quiet manner as becomes and is just between man and man, brother and brother, and, above all, to avoid strife, technicality and litigation."

Leaving out of consideration for the moment, this provision of the articles of submission, and also the statute, and testing the decree of the district court solely by the rules governing awards under the common law in cases where all questions of law or fact are submitted, it cannot be allowed to stand; for, while such awards may be set aside for fraud, accident or mistake, the fraud must be practiced upon the arbitrators, or some accident or mistake must be shown by which they were deceived and misled. The opinion in the case of the *Boston Water Power Co. v. Gray, supra,* will be found valuable and instructive upon this point. In that case, the court after carefully reviewing the authorities, held that an award would not ordinarily be set aside for mistake of the arbitrator in weighing the facts placed before him, or because of adopting erroneous rules of law. See also, *Burchell v. Marsh, supra.*

Several other matters appear from this record that are of themselves sufficient to overthrow the decree of the district court. For instance, after the award was made, its provisions were carried out by the parties, Mr. A. D. Wilson paying the amount found due from him, and Mr. W. J. Wilson executing a release of the chattel mortgage held by him upon the herd of cattle. Mr. W. J. Wilson also executed a quitclaim deed to his brother for 160 acres of land, and gave up the possession of a certain stable, as the result of the arbitration. At the trial below it was claimed, and this claim is pressed in this court, that so far as Mr. A. D. Wilson is concerned

this should not be taken as a ratification on his part of the award. It is said that the payment was made in pursuance of an oral contract made by him with his brother at the time of the submission, that each would pay the amount of any award that might be made against him, and further, that at the time' that payment was made Mr. A. D. Wilson was not fully informed as to the facts. As to this it may be said that the agreement to pay was no more than that necessarily implied from the articles of submission; and while a labored effort is made to show that Mr. A. D. Wilson was not fully informed of the facts at the time he paid the award, yet we think it sufficiently appears that he was informed of all the material facts upon which he now relies.

He was present during the taking of testimony against him, and was given an opportunity to introduce evidence in rebuttal. Complaint is now made of the action of the arbitrators in allowing A. D. Wilson only three or four days in which to disprove W. J. Wilson's accounts. It is not claimed that the arbitrators were asked to extend the time. He took the hazard of submitting the controversy upon the testimony produced, and after an award has been returned against him it will not be opened to permit him to introduce additional evidence which might have been procured at the time, with proper diligence. *Todd v. Barlow*, 2 Johns. Chan. 551.

Moreover, he accepted the benefits of the award, and has neither restored, nor offered to restore Mr. W. J. Wilson to the position occupied by him before the award was made. In addition to this, the testimony shows that Mr. A. D. Wilson, after paying the amount of the award to W. J. Wilson, immediately caused Wilson & Tucker to secure him for the amount due from W. J. Wilson upon the herd account.

The allegation of the bill that the arbitrators refused to administer an oath to the witness Rowan, is disproved by the record. This witness was sworn several times during the progress of the arbitration. The fact that he had been previously in the employ of W. J. Wilson did not disqualify him from acting as clerk for the arbitrators; although, had

this objection been made at the time, we doubt not his services would not have been engaged.

The accounts submitted to the arbitrators in this case extend over a period of ten years. In many instances the original bills are not available, having been lost or destroyed. Without doubt mistakes were made by the arbitrators, but that these mistakes were not sufficient to avoid the award, seems clear. The arbitrators were selected by the mutual agreement of the parties. Actuated by motives of friendship, they entered upon the unpleasant duties assigned to them, and devoted days and weeks of valuable time to the settlement of the differences that had unfortunately arisen between these brothers. The court below expressly found that no actual fraud affected the award. Should this award be set aside and an accounting rendered, it is doubtful if a conclusion could be reached that would not be equally as unsatisfactory. Be this as it may, in obedience to well settled principles, the award must now be upheld.

In support of its judgment, the district court in its opinion predicates something upon the claim that W. J. Wilson, in writing, waived the award. The paper relied upon to show this was signed at a time when A. D. Wilson was threatening Mr. Butters, one of the arbitrators, because of his concurrence in the award. Mutual friends becoming alarmed for the safety of Mr. Butters, interfered for the purpose of preventing trouble. As a result, Mr. W. J. Wilson was induced to present to one of the district judges of Arapahoe county, a paper asking him to make an order that the parties present their claims for final adjudication, stating at the time that his brother was dissatisfied with the award, and that he feared trouble. It would serve no useful purpose to enter further into the details of the matter, and we forbear to do so. It is sufficient to say that in our opinion the paper is entitled to no weight.

The judgment will be reversed, and the cause remanded, with directions to dismiss the proceedings.

*Reversed.*