No. 21834.

SISTERS OF MERCY OF COLORADO, A COLORADO CORPORATION *v.* MEAD & MOUNT CONSTRUCTION COMPANY, A COLORADO CORPORATION.

(439 P.2d 733)

Decided April 22, 1968.

448

HIESTER, TANNER and CLANAHAN, BILL EARL TOM, for plaintiff in error.

JAMES D. DOYLE, for defendant in error.

*In Department.*

Opinion by JOHN N. MABRY.*

THIS review on writ of error primarily involves the applicability of certain provisions and conditions in a written building contract between an owner and a contractor, and the validity of an arbitration proceeding held pursuant to Rule 109, Colorado Rules of Civil Procedure. The parties will be designated by name, or as owner and contractor. Another interested corporation, but not a party hereto, is Drilled Foundation, Inc. Wherever reference is necessary, Drilled Foundation, Inc., will be referred to by name, or as the subcontractor.

Both litigants are corporations. Sisters of Mercy, the owner, and Mead & Mount Construction Company, the contractor, entered into an agreement whereby the contractor agreed to furnish all the materials and perform all the work shown on the drawings and described in the specifications prepared by the owner's architects, and to build the New Mercy Hospital in Denver, Colorado, for the sum of approximately three and one-half million dollars ($3,500,000).

The original plans and specifications upon which all bids for the construction were based called for the construction of concrete caissons (drilled piers) as the main foundation for the building; and also required some 160 caissons of various specified types, length and sizes designed to penetrate what is known as the Blue Shale, a stratum of shale of more or less bedrock bearing qualities. Soil reports furnished the contractor showed only estimated and probable dimensions of the caissons and their adjuncts. Because of such uncertainty the written agreement contained optional means for the payment of extra expenses in case of changed plans, to wit, that the contract sum should be adjusted by specified unit prices per feet for deeper or higher caissons; and accordingly, it set out graduated unit prices in case

*District judge sitting under assignment of the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

plans needed to be changed on account of latent soil deficiencies. Another condition on the same page stipulated that where the quantities originally contemplated were so changed that application of the agreed unit price to the quantity of the work performed was shown to create a hardship to the owner or the contractor, there should be an equitable adjustment of the contract to prevent such hardship. Additionally, a "Changes in Work" portion of the contract contained the further condition that the owner would be permitted to make changes in the drawings and specifications within the general scope of the agreement. The extra cost in such cases would make allowance for the inclusion of all items of labor, materials, the use of power tools, public liability compensation insurance and other enumerated possible items of expense.

By mutual agreement it was convenanted that all disputes arising in connection with the contract were to be submitted to arbitration.

The contractor sublet the foundation work to Drilled Foundations, Inc., for the installation of concrete caissons and for the performance of other types of foundation work. The subcontractor soon experienced difficulty with the quality and texture of the soil and perceived that the architect's requirements for the building foundation (caissons) were inadequate. A conference on the site was held by the contractor, owner, architect, subcontractor, and others. The contractor requested instructions from the architect. The consensus of the conference was that because of the friable (tendency to pulverize or, in this instance, transform into mud) quality of the soil between the surface and the stratum of Blue Shale, the caissons would have to be placed deeper into the Blue Shale. Other requirements were also discussed. The architect issued a "Revised Caisson Schedule" (Drawing No. 610) which called for increased number of feet penetration and many other requirements, all of which,

in turn, called for greatly increased use of materials, labor and expense.

In transmitting his Revised Schedule, No. 610, the architect stated that the contractor should be paid for such extra work on the unit cost basis set out in the contract [option (a) above]. The contractor and subcontractor protested the "unit cost" to measure costs of additional work and insisted that the Revised Schedule required: that the holes be drilled deeper and greater in diameter; that more concrete was needed to fill them; that the renting of larger cranes to handle the longer casings were needed; that in many instances double casings would be needed where only one casing was called for in the original plans; that more hours of labor would be required; and that the contractor should be paid on the basis of reasonable cost for labor, materials and expenses as set out in the other contract provisions.

The written agreement also provided that the work should not be interrupted in the event of disputes. Accordingly, the work progressed without the contractor needing to then invoke the suggested changes in the work provisions. The work was finished on schedule and was of satisfactory quality.

The contractor demanded arbitration; the owner concurred. By mutual request of the parties the Honorable Robert W. Steele, an experienced and able district judge, acted as Arbitrator. Extensive hearings were held. The owner, contractor, subcontractor, architects and other witnesses were all present and represented by counsel. All participated. We have studied the record and, accordingly, we approve and adopt the Arbitrator's Findings and Decision in which he stated the following:

"It would seem undisputed here that it became evident from the very beginning of drilling operations that a new plan and design had to be put into effect in order for the hospital addition to have a firm foundation. The fact that the Brown Shale could not perform the func-

tions and carry the bearing burden that the architect believed it could when the plans were drawn cannot be attributed to any errors, mistakes, wrongdoing, or other conduct of any human being, or agency or facility controlled or operated by human beings. The extra costs and expenses for labor and materials necessarily incurred in order to carry out the changed plan and design were not trivial or inconsequential. The conditions encountered by actual drilling could not have been anticipated or foreseen to the full extent either by the architect, the contractor, or the subcontractor, and consequently it should not be said that they included such possible costs in their original bids. The architect having stated in his instructions to the contractor when 610 was transmitted that unit prices as provided in the main contract would apply to the extra work made necessary by the new plan, it would have been an idle gesture on the part of the contractor to have proceeded to attempt to comply with the contract provisions relative to change orders. Under the circumstances such complaince was not required, and the contractor should not be penalized or deprived of any rights he may have because of failure to fulfill the requirements of the contract documents as to change orders.

"It is the opinion and finding of the Arbitrator that the provision of the main contract relating to unit prices quoted herein does not apply as the basis for payment to the contractor or subcontractor for the extra work required by the change in plans for the construction of the caissons."

The Arbitrator further determined the following: that the amount found to be due the subcontractor should be considered as a claim of the general contractor against the owner; that the dispute was a proper subject for determination in the arbitration proceeding and, thereupon, awarded the sum of $28,121.90 for the extra work and costs, to be added to the price stated in the original contract between the owner, Sisters of Mercy, and Mead

& Mount Construction Company, the contractor; that $20,104.10 be deemed and considered as due and owing to the subcontractor, Drilled Foundation, Inc.; and that if the aforementioned sum be received by Mead & Mount Construction Company it should be held by the latter for the use and benefit of Drilled Foundation.

The award was duly presented to the district court in Denver and judgment entered in favor of Mead & Mount Construction Company, contractor, against the Sisters of Mercy, owners, in the sum of $28,121.90 pursuant to Rule 109 of the Rules of Civil Procedure.

The usual motion for a new trial and a petition to set aside the judgment were filed, considered and denied. The confirmation and approval of the award by the district court of Denver were regularly entered.

The owner's contention on this writ of error is: (1) that the award is outside the scope of the matters submitted to the Arbitrator; (2) that the proceeding, although purported to be in conformance with Rule 109 of Colorado Rules of Civil Procedure, the statutory requirements for arbitration were not adhered to, and the award is therefore not entitled to be filed as a judgment; (3) and finally, that the Arbitrator made separate, final findings which were inconsistent with each other, in addition to other alleged errors.

The contractor maintains: that the writ of error should be dismissed because the owner and contractor agreed the judgment should be final and not appealable; that the writ of error was not perfected within the time required by Rule 111(b), Colorado Rules of Civil Procedure; that the motion for new trial was not filed within the time provided by the Rules; that judgment on the arbitration award was entered pursuant to Rule 109 and pursuant to stipulation of counsel, and that therefore any objection to the procedural matter was waived; that under Rule 109 a judgment entered on an arbitration award is not open directly or indirectly for review and can only be impeached and set aside for

fraud and other sufficient causes; and even if the Court determines that no valid judgment entered pursuant to Rule 109 there was, nevertheless, a valid common law award within the scope of the summation upon which there has been a judgment entered.

There may be merit to the contractor's various technical contentions. However, in the situation here, and in the spirit of the arbitration concept it is deemed advisable to reach across technicalities and eschew needless verbiage. The questions on this review can be reduced to one issue and simplified:

*Is the award entered by the Arbitrator a valid one under R.C.P. 109?*

■ *The answer is in the affirmative.*

The arbitration proceedings were in conformity with R.C.P. 109.

■ The province of arbitration was well stated in *People ex rel. Kimball v. Crystal River Corporation,* 131 Colo. 163, 167, 168, 280 P.2d 429, 432, and is applicable here:

"We think it is fundamental law that an individual or an agency of the state may not freely participate in the selection of arbitrators, in accordance with statute, attend the hearing, submit his evidence, hope for a favorable award, and in the event of an adverse finding, seek a review merely because the award is unfavorable to him or it. It is fundamental that arbitration in its very nature is a method of settling disputes without court procedure. In *Twin Lakes v. Rogers,* 112 Colo. 155, 147 P.(2d) 828, we held: 'Arbitrators "are the final judges of both law and fact, and an award will not be reviewed or set aside for mistake in either." '

\* \* \*

"\* \* \* The award of the arbitrators is of equal dignity with a judgment, and may only be reviewed for the causes set forth in Rule 109 R.C.P. Colo."

■ Courts should be cautious in interfering where an award is fair on its face and should never do so,

except to prevent a "manifest injustice." *McIntosh v. Hartford Fire Insurance Company*, 106 Mont. 434, 78 P.2d 82, 115 A.L.R. 1164.

█ The work in question was well and timely performed and furnished a good foundation for the hospital. The parties freely consented to, and participated in, the arbitration. There has been no claim of fraud, mistake or other sufficient cause to impeach the proceedings or the award. The hearings were fairly conducted and the award made is a just and proper one. Strict adherence to legal punctilio is not required in arbitration proceedings as in court procedure.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE PRINGLE and MR. JUSTICE HODGES concur.