COLUMBINE VALLEY CONSTRUCTION CO., a Colorado Corporation, Petitioner-Appellee,

v.

The BOARD OF DIRECTORS, ROARING FORK SCHOOL DISTRICT RE–1J, Respondent-Appellant.

No. 80SA300.

Supreme Court of Colorado, En Banc.

April 13, 1981.

Wolf & Slatkin, Albert B. Wolf, Meer & Meer, Robert Meer, Denver, for petitioner-appellee.

Nelson, Hoskin, Groves, & Prinster, John W. Groves, Jon E. Getz, Grand Junction, Wm. V. Hodges III, Carbondale, for respondent-appellant.

QUINN, Justice.

This appeal questions the validity of ex parte proceedings to enforce an arbitration award under C.R.C.P. 109. The appellants, Board of Directors of the Roaring Fork School District RE–1J (school district), challenge the district court's denial of a motion under C.R.C.P. 60(b) to vacate a judgment entered on an arbitration award against the school district and in favor of Columbine Valley Construction Company (Columbine). We affirm the order denying the motion to vacate.

The school district on November 26, 1974, entered into a contract with Columbine, a general contractor, for the construction of school buildings near Basalt and Carbondale, Colorado. The contract was prepared by the school district and contained an arbitration provision which stated:

"All claims, disputes and other matters in question arising out of, or relating to, this contract or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrator shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

A dispute arose over the construction contract and the matter was submitted to a panel of three arbitrators. After hearings attended by both the school district and Columbine, the panel on March 8, 1979, awarded Columbine the sum of $132,300,[1] subject to "the obligation of [the] School District to comply with the requirements of C.R.S. 38–26–107 (1973 as amended) to pay any valid claims of subcontractors before payment of any amount is made to [Columbine]." The award was expressly intended as a "full settlement of all claims and counterclaims submitted to . . . arbitration."

The school district refused to pay the award. On May 21, 1979, Columbine filed a verified petition in the district court alleging its written agreement with the school district to submit the contractual dispute to arbitration and to accept the arbitration award as final and enforceable in a court of competent jurisdiction. Columbine requested the entry of judgment on the award pursuant to C.R.C.P. 109(e).[2] The same day the clerk of the district court entered a judgment based on the petition. The judgment incorporated by reference the arbitration award and was entered on behalf of Columbine against the school district in the amount of $132,300, plus interest at the rate of 8% per annum from March 8, 1979, with directions to the school district to comply with section 38–26–107, C.R.S.1973.

On June 2, 1979, the school district filed a motion to vacate the judgment under C.R.C.P. 60(b) on the ground that it was void.[3] Columbine thereafter sought execution on the judgment by making demand upon the Garfield County Commissioners to levy a tax pursuant to section 13–60–101, C.R.S. 1973.[4] The school district then moved for a

1. The arbitrators concluded in their award that Columbine was entitled to the sum of $283,600 and the school district the sum of $151,300 on its counterclaim, thereby resulting in a balance due Columbine of $132,300.

2. C.R.C.P. 109(e) allows the recipient of an arbitration award to "file the same with the clerk of the district court of the county wherein the matters were arbitrated, who shall enter a judgment thereon . . . ." The arbitration proceedings were conducted in Denver and, therefore, Columbine's petition under C.R.C.P. 109(e) was properly filed in the Denver District Court.

3. C.R.C.P. 60(b) states:
"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equita-

ble that the judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than six months after the judgment, order, or proceeding was entered or taken. A motion under this section (b) does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court: (1) To entertain an independent action to relieve a party from a judgment, order, or proceeding; or (2) to set aside a judgment for fraud upon the court; or (3) when, for any cause, the summons in an action has not been personally served within or without the state on the defendant, to allow, on such terms as may be just, such defendant, or his legal representative, at any time within six months after the rendition of any judgment in such action, to answer to the merits of the original action . . . ."

4. Section 13–60–101(1) provides that when a judgment for the payment of money is entered against a quasi municipal corporation of the state or against an officer thereof in his official capacity, and when the duly constituted tax assessing and collecting officers fail to provide

stay of execution upon the judgment, C.R. C.P. 62(b), and on November 13, 1979, the district court conducted a hearing on the school district's motions. The court denied the motion to vacate the judgment but stayed enforcement proceedings pending this appeal.

The school district challenges the denial of its motion to vacate the judgment for several reasons, which can be summarized as follows: (1) Columbine should not have been permitted to proceed under C.R.C.P. 109 but, instead, should have been required to commence a traditional civil action for enforcement of the arbitration award; (2) an interpretation of C.R.C.P. 109 that permits the entry of judgment without notice or hearing would violate due process of law;[5] (3) the entry of judgment was improper because the arbitrators' oaths were not attached to the petition as required by C.R.C.P. 109(c); (4) the judgment is inconsistent with the arbitrators' award because the judgment does not expressly provide for the payment of other valid claims prior to the payment of Columbine's claim, as required by section 38–26–107, C.R.S.1973, and it awards interest from March 8, 1979; (5) the arbitrators failed to make specific findings of fact and conclusions of law, notwithstanding the parties' agreement to the contrary; and (6) the district court failed to grant the school district a proper evidentiary hearing on its motion under C.R.C.P. 60(b). We are not persuaded by these claims.

## I.

We first address the school district's argument that the proper remedy for enforcement of the arbitration award in this case is not a proceeding under C.R.C.P. 109 but, rather, is a civil action pursuant to traditional service of process and notice pleading. Specifically, the district argues that the clerk of the district court erred in entering judgment upon Columbine's petition because the school district agreed neither to arbitrate the matter under C.R.C.P. 109 nor to the entry of judgment upon an ex parte filing of the arbitration award.

■ We agree that an arbitration award may not be enforced pursuant to C.R.C.P. 109 unless the arbitration agreement permits the entry of judgment upon filing of the award with the court and otherwise satisfies the requirements of the rule. *Koscove v. Peacock*, 136 Colo. 371, 317 P.2d 332 (1957). However, we conclude that the arbitration agreement here did authorize the entry of judgment upon filing of the award and met the other requirements for enforcement under rule 109.

## A.

Arbitration has long been favored in this state as a convenient, speedy and efficient alternative to settling disputes by litigation. *See Western Oil Fields, Inc. v. Rathbun*, 250 F.2d 69 (10th Cir. 1957); *Ezell v. Rocky Mtn. Bean and Elevator Co.*, 76 Colo. 409, 232 P. 680 (1925); *Wilson v. Wilson*, 18 Colo. 615, 34 P. 175 (1893); *see also Burchell v. Marsh*, 58 U.S. (17 How.) 344, 15 L.Ed. 96 (1855). The courts of Colorado historically have recognized two forms of arbitration: the one conducted in conformity with a statute or procedural code, commonly called "statutory arbitration," and the other conducted pursuant to common law. *Ezell v. Rocky Mtn. Bean and Elevator Co., supra.* The Uniform Arbitration Act of 1975, section 13–22–201 *et seq.*, C.R.S.1973 (1980

for the payment of such judgment, the judgment creditor may file a transcript of the judgment in the county or counties in which the quasi municipal corporation is located. Thereupon, the county commissioners must levy a tax upon all the taxable property within the limits of the quasi municipal corporation for the purpose of paying the judgment. For purposes of section 13–60–101, a school district and its board of directors are considered "quasi municipal corporations." *Atchison, Topeka*

*and Santa Fe Railway v. School District No. 2*, 100 Colo. 148, 66 P.2d 541 (1937); *see School District No. 98 of Adams County v. Pomponi*, 79 Colo. 658, 247 P. 1056 (1926).

5. The case was transferred from the court of appeals to this court because of the constitutional issue raised by the school district in its brief. Sections 13–4–110, and 13–4–102(1)(b) C.R.S. 1973.

Supp.), represents the classic form of statutory arbitration. This act, however, applies only to agreements made on or after July 14, 1975, and for that reason has no effect on this controversy. C.R.C.P. 109, which became effective on April 6, 1941, adopted the provisions of sections 314 through 320 of the Code of Civil Procedure in the 1935 Colorado Revised Statutes. Thus C.R.C.P. 109, although procedural in nature, has its origin in a statutory code and in that sense represents a form of "statutory arbitration."

Under both statutory and common law arbitration the parties agree to submit their dispute to a selected arbitrator in lieu of a judicial resolution of the controversy. The most significant difference is that "in a common law arbitration suit must be brought on the award, whereas in a statutory arbitration the award is filed in the office of the clerk of the district court and execution is issued thereon." *Ezell v. Rocky Mtn. Bean and Elevator Co., supra* at 411–12, 232 P. at 681; *see Koscove v. Peacock, supra.*

Rule 109 accords an arbitration award a significance that is tantamount to a judgment and furnishes a self-executing procedure calculated to avoid the delay and expense incident to a common law action for enforcement. C.R.C.P. 109(e) provides:

> "The party in whose favor any award shall be made, may file the same with the clerk of the district court of the county wherein the matters were arbitrated, who shall enter a judgment thereon, and if such award requires the payment of money, the clerk may issue execution therefor."

In order to avail oneself of this summary procedure, however, the preliminary requirements of C.R.C.P. 109(b) must be satisfied.

**B.**

C.R.C.P. 109(b) requires the parties to agree in writing prior to the arbitration proceeding that (1) they will submit the dispute "to the arbitrator named therein," (2) they "will abide the award," and (3) the award may be filed with the clerk of the court "as a basis of a judgment and ... execution may be issued for its collection." All three requirements of C.R.C.P. 109(b) have been met in this case.

Recourse to arbitration by an institutional arbitration agency has become the prevailing trend of commercial arbitration in this country. *M. Domke, The Law and Practice of Commercial Arbitration* § 20.01 at 189–90 (1968). Consistent with this trend, the construction contract here expressly provided that all claims or disputes "shall be decided by arbitration in accordance with the Construction Industry Rules of the American Arbitration Association [AAA] then obtaining ...." This explicit agreement to arbitrate in accordance with the rules of the AAA incorporates by reference the rules of that association into the arbitration agreement. *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263 (7th Cir. 1976); *I/S Stavborg v. National Metal Converters,* 500 F.2d 424 (2d Cir. 1974); *Reed & Martin, Inc. v. Westinghouse Electric Corp.,* 439 F.2d 1268 (2d Cir. 1971); *Paley Associates, Inc. v. Universal Woolens, Inc.,* 446 F.Supp. 212 (S.D.N.Y.1978).[6] The Construction Industry Rules of the AAA which were in effect when this dispute was submitted to arbitration provided for the appointment of arbitrators from a list of qualified arbitrators compiled by the AAA and screened in a preferential order by the respective parties to the dispute. American Arbitration Association, Construction Industry Arbitration Rules, Sec. 13 (effective

**6.** Independently of case law authority for the "incorporation by reference" principle, section 1 of the Construction Industry Rules of the AAA expressly provided for its application under the terms of the arbitration agreement: "The parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration under the *Construction Industry Arbitration Rules.* These Rules and any amendment thereof shall apply in the form obtaining at the time the arbitration is initiated." American Arbitration Association, Construction Industry Arbitration Rules (effective January 1, 1977).

January 1, 1977).[7] This contractual reference to the AAA rules was specific enough to be enforceable in the event either party sought to compel arbitration pursuant to their agreement, *see, e. g., Commonwealth Edison Co. v. Gulf Oil Corp., supra; Reed & Martin, Inc. v. Westinghouse Electric Corp., supra; Kingsbrook Jewish Medical Center v. Katz, Waisman, et al.,* 37 App.Div.2d 518, 321 N.Y.S.2d 773, *aff'd,* 29 N.Y.2d 854, 277 N.E.2d 925, 328 N.Y.S.2d 5 (1971); *M. Domke, supra,* § 5.03 at 39–41, and satisfies the requirement of rule 109(b) that the parties agree to submit the dispute to a named or designated arbitrator.

The second requirement has also been satisfied. The contractual provision that "[t]he award rendered by the arbitrator shall be final . . . ." is nothing less than an agreement to abide the award as contemplated by rule 109(b).

The final requirement of rule 109(b)—a written agreement for the entry of judgment upon filing the award and for the issuance of execution thereon—has also been met. As previously noted, the agreement to arbitrate in accordance with the Construction Industry Arbitration Rules of the AAA incorporates into the contract the rules of that association, including those pertinent to the entry of judgment. *E. g., Commonwealth Edison Co. v. Gulf Oil*

*Corp., supra; I/S Stavborg v. National Metal Converters, Inc., supra; Reed & Martin, Inc. v. Westinghouse Electric Co., supra; Paley Associates, Inc. v. Universal Woolens, Inc., supra.* On March 8, 1979, the date on which the dispute was submitted to arbitration, section 47(c) of the Construction Industry Arbitration Rules of the AAA provided:

"Parties to these rules shall be deemed to have consented that judgment upon the award rendered by the arbitrator(s) may be entered in any Federal or State court having jurisdiction thereof." [8]

Furthermore, the arbitration clause of the construction contract explicitly stated that "judgment may be entered upon [the award] in accordance with applicable law in any court having jurisdiction thereof." When this sentence is read in conjunction with AAA rule 47(c), it leads directly to the conclusion that Columbine and the school district agreed to the entry of judgment upon filing the arbitration award with the court and to the issuance of execution upon that judgment, both of which are expressly authorized by C.R.C.P. 109(e).

## II.

■ We next address the school district's argument that C.R.C.P. 109(e), if construed

---

7. The procedure for the appointment of arbitrators, as outlined in Section 13 of the Construction Industry Rules of the AAA, is as follows:

"Section 13. APPOINTMENT FROM PANEL—If the parties have not appointed an arbitrator and have not provided any other method of appointment, the arbitrator shall be appointed in the following manner: Immediately after the filing of the Demand or Submission, the AAA shall submit simultaneously to each party to the dispute an identical list of names of persons chosen from the Panel. Each party to the dispute shall have seven days from the mailing date in which to cross off any names to which it objects, number the remaining names indicating the order of preference, and return the list to the AAA. If a party does not return the list within the time specified, all persons named therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator to serve. If the parties fail to agree upon any of the persons named, or if acceptable arbitrators are unable to act, or if for any other reason the appointment cannot be made from the submitted lists, the AAA shall have the power to make the appointment from other members of the Panel without the submission of any additional lists."

Section 17 of the same rules states that "[i]f the arbitration agreement does not specify or the parties are unable to agree as to the number of arbitrators, the dispute shall be heard and determined by three arbitrators, unless the AAA, in its discretion, directs that a single arbitrator or a greater number of arbitrators be appointed."

8. Rule 47(c) became effective March 1, 1974, before the parties executed the construction contract and arbitration agreement in this case. *See, e. g., Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263 (7th Cir. 1976); *Paley Associates, Inc. v. Universal Woolens, Inc.,* 446 F.Supp. 212 (S.D.N.Y.1978).

to permit the entry of judgment upon the ex parte filing of the arbitration award without affording notice or hearing to the judgment defendant, would violate due process of law. *U.S.Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 25. We acknowledge that C.R.C.P. 109(e) does authorize the entry of judgment without a prior notice or opportunity for hearing to the party against whom the arbitration award has been made, *West v. Duncan*, 72 Colo. 253, 210 P. 699 (1922); however, the rule does not violate due process of law.

It should be noted that the school district makes no claim of lack of notice or a less than adequate hearing at the arbitration proceeding with respect to its defenses to Columbine's claim.[9] Indeed, that arbitration proceeding was conducted with full participation by both disputants. The issue here, therefore, is not one of notice and opportunity for a hearing on Columbine's underlying claim but rather an issue of waiver in connection with the entry of judgment.

"The due process rights to notice and hearing prior to a civil judgment are subject to waiver." *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185, 92 S.Ct. 775, 782, 31 L.Ed.2d 124, 133 (1972). Thus, the parties to a contract may agree in advance to submit a claim to arbitration and to waive any further notice and hearing incident to the entry of judgment on the award. Due process of law requires no more than that the waiver be voluntarily, knowingly and intelligently made. *Id.* at 185, 92 S.Ct. at 782, 31 L.Ed.2d at 134. The facts underlying the execution of the construction contract demonstrate that the constitutional standard of waiver has been fully satisfied in this case.

As discussed in Part I.B., *supra*, the contract incorporated by reference the Construction Industry Rules of the AAA which, in turn, constitute a consent by the arbitrating parties to the entry of judgment

upon the arbitration award. In addition, the contract itself expressly provided for the entry of judgment "in accordance with applicable law in any court having jurisdiction thereof." The applicable law in this jurisdiction clearly permits a district court to enter judgment upon the ex parte filing of the arbitration award. C.R.C.P. 109(e); *Ezell v. Rocky Mtn. Bean and Elevator Co., supra; West v. Duncan, supra.*

The school district prepared the construction contract and it reasonably may be assumed that if it desired notice of the filing of the award before the entry of judgment, it would have included such provision in the agreement. The reason for the non-inclusion of such provision is evident. Little, if anything, would be accomplished by further notice to the non-prevailing party in an arbitration proceeding that the arbitration award was being enforced in accordance with the terms of the very agreement to which that party had previously consented in writing. The provisions of the construction contract here clearly manifest that type of waiver which, consistent with due process of law, permits the entry of judgment upon the ex parte filing of an arbitration award under C.R.C.P. 109(e).

### III.

The school district next challenges the entry of judgment for the reason that the arbitrators' oaths were not filed with the award. We are not persuaded by this claim either.

C.R.C.P. 109(c) states:

"Arbitrators shall not act until they subscribe to an oath and swear that they will well and truly try, and impartially and justly decide the matter in controversy, according to the best of their ability, which oath shall be filed with their award."

The requirement of the arbitrators' oath lends dignity to the arbitration proceeding

---

9. Had the school district not received notice of the time and place of the arbitration hearings, and had an award been entered in its absence, which later became the basis for a judgment

under C.R.C.P. 109, due process considerations would be seriously implicated. *See Twin Lakes Reservoir & Canal Co. v. Platt Rogers, Inc.*, 105 Colo. 49, 94 P.2d 1090 (1939).

without impairing its basic informality, *M. Domke, supra*, § 24.01 at 233, and, more importantly, assures the parties that their controversy will be resolved under the solemnity and sanction of the oath. *Hepburn v. Jones*, 4 Colo. 98 (1878).

■ Normally, the arbitrators' oaths should be filed with their award. However, the failure to do so does not automatically vitiate the validity of any judgment entered on the award. "Courts should be cautious in interfering where an award is fair on its face and should never do so, except to prevent a 'manifest injustice'." *Sisters of Mercy v. Mead and Mount Construction Co.*, 165 Colo. 447, 454–55, 439 P.2d 733, 736 (1968); *cf. Koscove v. Peacock, supra* (oral agreement can serve as substitute for written agreement to file award with court as a basis of judgment).

■ Here the arbitration award filed by Columbine under C.R.C.P. 109 contained a recital that the arbitrators had been duly sworn. No contrary evidence was presented by the school district and, therefore, that recital is presumed to be true. *Abbott v. Bob's U-Drive*, 222 Or. 147, 352 P.2d 598 (1960). Moreover, the oaths were actually filed, albeit belatedly, after the school district raised this issue for the first time in its motion for a new trial. These oaths constitute part of the record before us, are proper in form and content, and evidence due subscription by each arbitrator prior to the commencement of the arbitration proceeding. Under such circumstances the failure to file the oaths contemporaneously with the award is, at most, a technical defect not affecting the substantial rights of the parties. C.A.R. 35(e).

## IV.

■ The school district characterizes the judgment entered under C.R.C.P. 109 as inconsistent with the arbitration award in two particulars: (1) the judgment does not specifically provide for the payment of the valid claims of subcontractors pursuant to section 38–26–107, C.R.S.1973, prior to payment of the award to Columbine;[10] and (2) unlike the arbitration award, the judgment allowed interest at the rate of 8% per annum from the date of the award. We find no inconsistency in either respect.

The judgment awarded Columbine $132,-300 and stated that the school district "shall comply with the provisions of section 38–26–107, C.R.S.1973, as amended, all pursuant to and in accordance with the arbitration award, a copy of which is attached hereto and incorporated herein by this reference." It is totally consistent with, and in fact duplicates, the language of the arbitration award recognizing the school district's obligation "to pay any valid claims of subcontractors before payment of any amount is made to [Columbine]."

■ As to interest, section 5–12–102, C.R.S.1973 (1980 Supp.), Colo.Sess.Laws 1975, ch. 61, 5–12–102 at 257, authorizes interest at the rate of 8% per annum for money due on any instrument in writing or on account. The arbitration award represented a liquidated sum which became due and payable on the date of its issuance, March 8, 1979. *See, e. g., North Drive-In Theatre Corp. v. Park-In Theatres*, 248 F.2d 232 (10th Cir. 1957); *T & M Transp. Co. v.*

**10.** Section 38–26–107, C.R.S.1973, provides that if a supplier of labor or materials (subcontractor) has not been paid by the general contractor at the time of final settlement for the work contracted to be done, the subcontractor may file a verified statement of his claim with the board, officer or person who awarded the contract (payor). The payor must publish notice of final settlement with the general contractor at least 10 days prior thereto in a public newspaper of general circulation published in the counties wherein the work was contracted for and performed. Upon the filing of such claims, the payor shall withhold from all pay-

ments to the contractor sufficient funds to insure the payment of the subcontractors' claims until these claims have been paid by the general contractor or withdrawn. Such funds shall not be withheld longer than ninety days following the day fixed for final settlement as published unless suit has been filed by the subcontractor within that period to enforce the unpaid claim and a notice of *lis pendens* is filed with the payor. At the end of the 90 day period, the payor must pay the general contractor all monies due him which are not the subject of suit and *lis pendens* notice.

*Shattuck Chem. Co.*, 158 F.2d 909 (10th Cir. 1947); *York Plumbing & Heating Co. v. Groussman Inv. Co.*, 166 Colo. 382, 443 P.2d 986 (1968); *see generally* M. Domke, *supra*, § 39.01 at 334. The clerk committed no error and did nothing inconsistent with the arbitration award in allowing interest from the date of the award.[11]

## V.

The school district next asserts that the arbitrators' award is invalid because the school district and Columbine agreed to the rendition of specific findings of fact and conclusions of law by the arbitration panel and, in the absence of such findings and conclusions, the completeness and validity of the arbitrators' resolution of the contractual dispute cannot be determined. Both the record and C.R.C.P. 109(g) refute this claim.

First, the school district offered no evidence in support of the purported requirement of specific findings of fact and conclusions of law. In the absence of a statute or provision in the arbitration agreement, an arbitration award need not recite specific findings of fact and conclusions of law. *E. g., Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956); *Kurt Orban Co. v. Angeles Metal Systems*, 573 F.2d 739 (2d Cir. 1978); *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211 (2d Cir. 1972); Annot., *Necessity That Arbitrators, in Making Award, Make Specific or Detailed Findings of Fact or Conclusions of Law*, 82 A.L.R.2d 969 (1962). A mere assertion of error unsupported by evidence cannot serve as a

basis for vacating a judgment. *Twin Lakes Reservoir and Canal Co. v. Platt Rogers, Inc.*, 105 Colo. 49, 94 P.2d 1090 (1939). Second, the arbitration award specifically answers the claim of incompleteness. The award states that it is "in full settlement of all claims and counterclaims submitted to this arbitration." Third, rule 109(g) provides that, in the absence of fraud or other extraordinary basis for relief, once a matter "has been submitted to and decided by arbitrators, according to the terms of this rule, such matter so arbitrated shall be held to have been adjudicated and settled, and not open, directly or indirectly, for review . . . ."[12] Thus, even if the district court believed the arbitrators misinterpreted the construction contract or erred in their factual determinations, it could not substitute its judgment for theirs. *E. g., I/S Stavborg v. National Metal Converters, Inc., supra; Western Oil Fields, Inc. v. Rathbun, supra; Twin Lakes Reservoir and Canal Co. v. Platt Rogers, Inc., supra; Wilson v. Wilson, supra.*

## VI.

Finally, the school district argues the district court failed to grant a proper evidentiary hearing on its motion to vacate the judgment under C.R.C.P. 60(b). The record establishes that a hearing was held on November 13, 1979, at which counsel for both parties were present. Scheduled for hearing on that day was the school district's motion to vacate the judgment. However, the school district's counsel stated at the beginning of his argument that he understood "today's hearing is really on our mo-

---

11. The school district also contends that because it will be forced to comply with section 38–26–107 before paying any monies to Columbine, the judgment awarded to Columbine was *not for a sum certain and hence is invalid. See* C.R.C.P. 58(a). This argument is devoid of merit. The total amount due from the school district is $132,300, whether that amount is paid directly to Columbine or is paid to subcontractors owed money by Columbine. In either instance, Columbine will be the beneficiary of moneys paid, as intended by the arbitration award.

12. By its express terms C.R.C.P. 109(g) "shall not be construed to prevent an adjudication by arbitrators from being impeached or set aside for fraud or other sufficient cause, the same as a judgment of a court of record, nor to prohibit relief on grounds of mistake, inadvertence, surprise or excusable neglect, as in the case of other judgments, orders or proceedings of the court." The mistake, inadvertence, surprise or excusable neglect subject to correction must be by a party to the action or his legal representative. *E. g., Columbia Savings & Loan Ass'n. v. District Court*, 186 Colo. 212, 526 P.2d 661 (1974).

tion to stay execution." The court suggested that both motions should be resolved at one hearing. Counsel for the school district then presented the court with a memorandum on its motion to vacate and made no objection to the determination of the motion at that time. The school district was not denied an opportunity to present evidence on its motion to vacate. It simply elected to stand on its memorandum.

A trial court's determination of a motion to vacate a judgment under C.R.C.P. 60(b) will not be disturbed on appellate review in the absence of a clear abuse of discretion. *Riss v. Air Rental, Inc.*, 136 Colo. 216, 315 P.2d 820 (1957); *Mountain v. Stewart*, 112 Colo. 302, 149 P.2d 176 (1944). No abuse of discretion has been demonstrated in this case.

The judgment is affirmed.