**MATTHIAS ECKSTEIN d/b/a**
**IRIE ASSOCIATES, Petitioner**
**v.**
**MALCOLM M. PRESTON and**
**SUSAN R. PRESTON,**
**Respondents**

Civil No. 457/1994

Territorial Court of the Virgin Islands

Division of St. Thomas and St. John

October 7, 1999

Matthew J. Duensing, Esq., Richard H. Dollison, Esq., (D'Amour, Jones, Stryker, Duensing & Nichols), St. Thomas, U.S.V.I., *for Petitioner*

Andrew L. Capdeville, Esq., Dean L. Barnes, Esq., Law Offices of Andrew L. Capdeville, P.C., St. Thomas, U.S.V.I., *for Respondents*

HOLLAR, *Judge*

## MEMORANDUM OPINION

This matter is before the Court on petitioner's application to vacate the arbitration award entered against him on May 31, 1994, pursuant to 9 U.S.C. §§ 10(a)(2), 10 (a)(3), and 10 (a)(4),[1] and to award him damages against respondents. For the reasons that follow petitioner's application is denied in all respects.

## I. FACTS AND PROCEDURAL POSTURE

On July 13, 1992, petitioner Matthias Eckstein, d/b/a Irie Associates, (hereinafter "IRIE"), as the Contractor entered into a contract with respondents Malcolm and Susan Preston, (hereinafter "the Prestons"), as the Owners to build a house on Parcel No. 300-17, Estate Chocolate Hole, St. John, U.S. Virgin Islands. The contract provided, *inter alia*, that the basis of payment would be the

---

[1] Title 9 U.S.C. §§ 10(a)(2), 10(a)(3) and 10(a)(4) state:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

cost of the work, as defined by Article 7 of the contract, plus a ten percent (10%) contractor's fee, but also that the contract price for the work described in the original plans and specifications could not exceed a guaranteed maximum price of $483,000.00. Additionally, IRIE was to be paid cost plus ten percent (10%) for any change orders authorized by the validly executed contract.

During the course of building, several changes were made to the original design. Although IRIE consistently represented, until July 7, 1993, that it could complete the project under budget, the project exceeded the maximum guaranteed price.

By July 7, 1993, IRIE informed the Prestons that final cost of building their house would be $620,521.00, or $137,521.00 more than the guaranteed maximum price. Upon being so informed, the Prestons sought to initiate a claim, via telephone, with the designer/draftsman, Gary Turner, on July 14, 1993.[2] On July 16, 1993, Malcolm Preston, in a letter to Gary Turner, informed him that under the contract the maximum price was to be adjusted by *change orders which had been approved in advance of the relative work being undertaken*, and requested that he arrive at a corrected guaranteed maximum price so that the balance due could be ascertained. That correspondence served as a formal claim against IRIE's projected final cost of $620,521.00.

On August 16, 1993, the designer/draftsman rendered his decision on the Prestons' claim. He indicated that he had found no evidence supporting their claims and allegations, and that the sums attached to the contractor's proposed change orders were, in his opinion, reasonable and legitimate, if not conservative. He determined that the adjusted maximum price to be paid under the contract, as modified by four (4) change orders, was $592,497.25, representing a net increase of $109,497.25 over the original guaranteed maximum price of $483,000.00.

Dissatisfied with the designer/draftsman's decision, on September 14, 1993, the Prestons made demand for arbitration before the American Arbitration Association. In their demand for arbitration,

---

[2] Under Article 4.3 of the supplemental General Conditions Of Contract, claims between Owner and Contractor were to be submitted initially to the Architect. Except as otherwise provided, a ruling by the Architect on a claim was a prerequisite to arbitration.

the Prestons asserted a breach of contract claim on the grounds that IRIE: (1) failed to continue or complete work on the project; (2) performed non-conforming work; (3) delayed the performance of the work; (4) expended an amount in excess of the properly adjusted guaranteed maximum price; (5) failed to properly account for, document or communicate costs, charges, bills, credits and change orders to claimants or the architect; (6) improperly billed them; (7) mis-appropriated project resources and materials; and (8) failed to properly credit them for savings in time and money. IRIE was provided with a copy of the Prestons' demand for arbitration by letter dated September 13, 1993. IRIE objected to the scope of issues raised by the Prestons' demand for arbitration in letters to the AAA dated September 27, 1993 and December 8, 1993.

On October 4, 1993, Lucy Zamora, Administrator of the American Arbitration Association in Miami, Fla., acknowledged receipt of the Prestons' demand for arbitration and advised IRIE that he should file any counterclaims it had, and that it had ten (10) days to respond to the claims by the Prestons, failing which, the claim would be assumed to have been denied. Included with the letter was a list of names selected by the Administration's panel from which one was to be appointed. The letter advised that the parties were to indicate their preferences and that the AAA would select a neutral, mutually acceptable arbitrator.

On October 21, 1993, IRIE responded to the Prestons' demand for arbitration. In its letter to the AAA Administrator, IRIE stated that only one claim had been properly submitted for a decision by the architect, and that claim had been found to be without merit. IRIE also filed its counterclaim, alleging that the Prestons had breached Articles 4.3.4 and 4.3.2 of the contract. These provisions provide as follows:

> **4.3.2. Decision of Architect.** Claims, including those alleging an error or omission by the Architect, shall be referred initially to the Architect, as provided in Subparagraph 4.4. A decision by the Architect, as provided in Subparagraph 4.4.4, shall be required as a condition precedent to arbitration or litigation of a claim between the contractor and owner as to all such matters arising prior to the date final payment is due, regardless of (1)

133

whether such matters relate to execution and progress of work or (2) the extent to which the work has been completed. The decision of the Architect in response to a claim shall not be a condition precedent to arbitration or litigation in the event (1) the position of Architect is vacant, (2) the Architect has not received evidence or has failed to render a decision within agreed time limits, (3) the Architect has failed to take action required under Subparagraph 4.4.4 within 30 days after the claim is made, (4) 45 days have passed after the claim has been referred to the Architect, or (5) the claim relates to a mechanic's lien.

**4.3.4 Continuing Contract performance.** Pending final resolution of a claim including arbitration, unless otherwise agreed in writing the contractor shall proceed diligently with performance of the contract and the owner shall continue to make payments in accordance with the contract documents.

**14.1.2** If one of the above reasons exists, the contractor may, upon several additional days' notice to the owner and Architect, terminate the contract and recover from the owner payment for work executed and for proven loss with respect to materials, equipment, tools, and construction equipment and machinery, including reasonable overhead, profit and damages.

Damages were also sought for all expenses, including attorney's and arbitration fees, incurred by it as a result of the alleged breach of contract. Lastly, IRIE requested that an arbitrator be appointed as soon as possible. On December 1, 1993, the AAA notified the parties that Mr. Pedro Lopez had been appointed Arbitrator. On December 31, 1993, counsel for the Prestons disclosed, in a letter to the AAA, that Pedro Lopez had been called as a witness in a case by stateside counsel in *Sparky's Waterfront Saloon, Inc. v. Topa Equities (V.I.), Ltd.* Civil No. 1991/59, (D. V. I. 1994).

On January 14, 1994, the AAA informed the petitioner of its receipt of the December 31, 1993 disclosure by counsel for the Prestons. On January 24, 1993, petitioner Matt Eckstein/IRIE

responded, advising the AAA, *inter alia*, that he saw no conflict in Lopez' activities as a witness in other construction proceedings; it was on the strength of Lopez' professional background that he preferred Lopez be the arbitrator in the matter; and that the fact that he was being asked to testify in other proceedings only confirmed his choice.

On March 15, 1994, the AAA, through written correspondence, confirmed the arbitrator's intent to hear all of the issues submitted for arbitration.

The arbitration proceedings were held on May 12th and 13th, 1994. The *Sparky's* trial, in which the arbitrator was to testify, commenced on May 23, 1994. One week later, on May 31, 1994, Mr. Lopez, as arbitrator, rendered his decision in the matter *sub judice*, awarding the Prestons $107,500.00 in full settlement of all claims and counterclaims submitted to arbitration, and ordering that the arbitrator's fee in the amount of $2,063.00 be borne equally by the parties.

■ On June 8, 1994, IRIE filed a complaint[3] and petition to vacate the arbitration award pursuant to 9 U.S.C. § 10, and to recover damages for breach of contract. In its complaint IRIE alleged that the arbitrator's award should be vacated because: (1) partiality was evident in the arbitration, in violation of 9 U.S.C. § 10(a)(2); (2) the arbitrator was guilty of misconduct in disregarding the express terms of the contract and in refusing to hear evidence pertinent and material to the controversy, which prejudiced the rights of IRIE, in violation of 9 U.S.C § 10(a)(3); and (3) the arbitrator exceeded his authority by addressing issues that were not properly the subject of arbitration and rendering an award based on his assessment of those improperly submitted issues.

On July 21, 1994, respondents filed a motion to dismiss IRIE's application. In their supporting verified memorandum of law, the Prestons argue that IRIE's petition to vacate the arbitration award should be dismissed because IRIE failed to allege any facts upon

---

[3]The filing of a summons and complaint was inappropriate since the vacating of an arbitrator's award is determined pursuant to a petition for writ of review, and not an action subject to the Court's original jurisdiction.

which "an inference of [im]partiality" (sic) can be shown, and the scope of the arbitration was proper.

On August 5, 1994, IRIE filed an opposition to the Prestons' motion to dismiss as well as a cross-motion to vacate the award. In its opposition, IRIE reiterated its position, including *inter alia*, its assertions that the contract was a "cost plus" rather than a "guaranteed maximum price" one, the arbitrator exceeded his authority in allowing the Prestons to present evidence on claims not properly preserved for arbitration, and the arbitrator was not impartial, and failed to fully disclose his relationship with counsel for the respondents.

With respect to the nature of the contract, IRIE contended that although there was a contract reference to a guaranteed maximum price of $483,000.00, the guaranteed maximum only applied if no changes in the original plans and specifications were made, and that as soon as the first change occurred on the project the guaranteed maximum price provision became inoperable.

The Prestons vehemently opposed this contention in their supplement to their motion to dismiss filed September 26, 1994. They averred that no provision exists in any document between the parties for nullifying the guaranteed maximum price, *although provisions existed for modifying that amount through properly executed change orders*. They also asserted that IRIE apparently miscalculated the cost of the project, and then inflated the costs on change orders in an effort to make up the deficit between the contract price and the actual cost of the project. Additionally, the Prestons contended that any change orders relied upon by IRIE are invalid since *none had been either signed or submitted timely as required by the contract*. The Prestons also contended that IRIE was well aware, as early as December 31, 1993, that the arbitrator was to testify in the *Sparky's* case as an expert witness, and of the attendant implications thereto; *to wit:* compensation for his expert opinion.

On July 19, 1996, the Court scheduled the matter for a hearing on August 12, 1996. IRIE moved for a continuance on July 30, 1996. On August 12, 1996 the Court convened the hearing. Neither party nor their counsel appeared. The Court rescheduled the hearing for October 22, 1996. On October 22, 1996, the matter again came on for hearing before Judge Ive Swan. Because of prior involvement

with the arbitrator, Judge Swan recused himself from the case. The case was then referred to the undersigned.

On November 6, 1996, IRIE filed a motion to disqualify counsel for respondents on the ground that he was in violation of ABA Model Rule 3.7 by acting as advocate and a necessary witness in the same case.

On December 2, 1996, the Prestons opposed IRIE's motion to disqualify counsel claiming, *inter alia*, that IRIE's motion was procedurally improper, and that their counsel was not a necessary witness. IRIE replied to the Preston's opposition to the motion on December 6, 1996.

On February 10, 1997, the Court scheduled the matter for February 26, 1997. On February 26, 1997, the Court heard oral argument on all pending motions.

On February 27, 1997, the Prestons filed a motion to confirm the arbitration award. IRIE opposed the motion to confirm on March 5, 1997.

On April 21, 1997, after hearing arguments on the merits from counsel, the Court found that the arbitrator did not exceed his authority and thus denied relief pursuant to 9 U.S.C. § 10(a)(4). The Court decided that closer scrutiny was required before a decision could be rendered as to the availability of relief pursuant to 9 U.S.C. §§ 10(a)(2) and 10(a)(3) and gave the parties seven days to submit supplemental briefs. Both parties filed supporting briefs on April 28, 1997. On May 12, 1997, respondents filed a response to petitioner's supporting brief.

## II. DISCUSSION

In ruling on petitioner's remaining claims the Court will address the following: (1) what constitutes the law of the Virgin Islands regarding vacatur of an arbitrator's award; (2) whether an arbitrator is guilty of evident partiality where a business relationship existed at the commencement of and during the pendency of the arbitration between the arbitrator and counsel for the Prestons, if the relationship had been "substantially" disclosed before the arbitrator's selection, without objection; (3) whether an arbitrator is guilty of misconduct because he rejected an interpretation of a contract provision in dispute, advanced by the non-prevailing

137

party even if the arbitrator committed an error of law in his interpretation of the contract provision(s).

### A. *This Action Is Maintainable Under Title 9 U.S.C. § 10 Even Though The Contract Provided For The Law Of The Place Where The Project Is Located To Govern*

This action arises pursuant to an arbitration award rendered as a result of a dispute between private parties over various terms of a construction contract. Article 4.5.1 of the contract addresses controversies and claims subject to arbitration, and states, *inter alia*, "any controversy or claim arising out of or related to the contract, or breach thereof, shall be settled by arbitration. . . and judgment upon the aware rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof. . ." Article 13.1.1 of the supplemental General Conditions of the Contract For Construction, provides that the contract would be governed by the law of the place where the project is located.

■ In his complaint (sic), IRIE alleged that the action was being brought pursuant to the Federal Arbitration Act, specifically Title 9 U.S.C. §§ 10(a)(2), 10(a)(3), and 10(a)(4). It has been established that the Territorial Court has jurisdiction over a private arbitrator's award under both Virgin Islands law and the Federal Arbitration Act. *Government of the Virgin Islands v. United Indus. . . Workers of N.A.*, 38 V.I. 170, 179-84 (D.V.I. 1997) (Several sections of the FAA, including 9 U.S.C. § 10(a), apply in the Territorial Court.).

■ Although there is no Virgin Islands statute on point regarding post arbitration judicial relief,[4] the RESTATEMENT (SECOND) OF CONTRACTS § 345(f) provides a rule of law for the Virgin Islands. *Id.*

---

[4] *Id.* at 181. The only local statute addressing post-arbitration judicial relief is V.I. Code Ann. tit. 24, § 383. That section provides for the initiation of suits for violation of a contract between a *public employer* and a *union*, as well as by the *public employees* against a *union*. In contrast to the narrowly circumscribed review proceeding applicable to actions to vacate an arbitration award, § 383 allows for the initiation of a civil action in contract, where the plaintiff's rights would be *determined ab initio, notwithstanding the outcome or finality of any grievance or arbitration proceeding. Gomez v. Government of the Virgin Islands*, 882 F.2d 733, 737 (3d Cir. 1989). Where the plaintiff is a public *employee*, an action pursuant to § 383 arises only if his union breaches its duty to fairly represent the employee in mediation or arbitration procedures pursuant to V.I. Code Ann. tit. 24, § 376. *Id.* In the case of a *union* plaintiff, an action pursuant to § 383 arises only where the union failed to initiate proceedings before the Public Employees Relations Board

citing 1 V.I.C. § 4.[5] The Restatement (Second) of Contracts, § 345)(f) provides:

> The judicial remedies available for the protection of interests stated in § 344 [expectation, reliance, or restitution interests] include a judgment or order. . .(f) *enforcing an arbitration award.*

Comment (e) to § 345 states that "because questions concerning the enforcement of arbitration award depend largely on statute, they are not considered in detail in this Restatement." Moreover, the Court of Appeals for the Third Circuit has recently held that the Restatement (Second) of Contracts, § 345, comment (e) contemplates that state courts *will look to arbitration statutes for guidance. Government of the Virgin Islands v. United Indus. Workers, N.A.,* 169 F.3d 172, 178 (3d Cir. 1999); *see, also, Allied-Bruce Terminix Co. v. Dobson,* 684 So.2d 102, 106 (Ala. 1995) (opinion after remand) (*adopting provisions of the FAA to define state law to the extent the FAA is consistent with otherwise-provided procedures of the state*). It is, however, axiomatic that guidance is not needed where there already exists an established, relevant, rule of law. As such, it would appear that in this jurisdiction, given the fact that the Restatements of Law have not addressed the issue, territorial *case law* ought to govern. Notwithstanding these observations, the Court of Appeals for the Third Circuit has held that because the common law, as articulated by the Restatement provides that arbitration law depend on a statutory scheme, the Territorial Court should apply the FAA scheme to questions of arbitration. *United Indus. Workers, N.A., supra,* at 178-79. Thus, in accordance with the dictate of the Court of Appeals for the Third Circuit, this Court

---

and failed to allege any circumstances qualifying as an exception to the requirement that they exhaust their administrative remedies and, thus, failed to comply with the good faith requirement of V.I. Code Ann. tit. 24, § 346. *McBean v. Government of the Virgin Islands,* 32 V.I. 120, 127 (Terr. Ct. 1995).

[5] V.I. Code Ann. tit. 1, § 4 states:

The rules of the common law, as expressed in the restatement so the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

shall apply the FAA, specifically 9 U.S.C. § 10(a), to the issues now before the court.

**B.** *An Arbitration Is Not Guilty Of Evident Partiality Under 9 U.S.C. § 10(a)(2). Where A Business Relationship Existed At The Commencement Of And During The Pendency Of The Arbitration Between The Arbitrator And Counsel For A Party To the Arbitration If The Relationship Had Been "Substantially" Disclosed Before The Arbitrator's Selection, Without Objection*

■ A party attacking the legality of an arbitration award provided for within a contract has the burden of sustaining such an attack. *Wright Lumber Co. v. Herron*, 199 F.2d 446 (10th Cir. 1952). In order to show "evident partiality" the challenging party must show that "a reasonable person would have to conclude that the arbitrator was partial to the other party to the arbitrator." *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989) *cert. denied*, 495 U.S. 947 (1990). "Evident partiality" requires proof of circumstances "powerfully suggestive of bias." *Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 681-82 (7th Cir.), *cert. denied*, 464 U.S. 1009 (1983).

The record in the case under consideration reflects that the arbitrator testified as an expert witness in *Sparky's Waterfront Saloon, Inc. v. Topa Equities (V.I.), Ltd.*, Civil No. 59/1991 (D.V.I. 1994) approximately one week before he rendered his decision as arbitrator in this matter in May of 1993. The record also discloses that the arbitrator had already been paid $5,730.00 of his $6,000.00 fee months earlier in February of 1993. Hence, IRIE's allegation that the arbitrator had a financial interest in receiving the balance due on his witness fee, and that such a financial interest caused him to be partial and biased toward the respondents because of some fear that counsel for the Prestons might somehow forestall the arbitrator's ability to receive the $270.00 balance due for his expert testimony is unpersuasive and, at best, speculative. For an award to be set aside on the basis of bias or interest, the evidence of bias or interest of the arbitrator must be direct, definite and capable of demonstration rather than being remote, uncertain, or speculative. *Tamari v. Bache Hasley Stuart, Inc.*, 619 F.2d 1196 (7th

Cir. 1980), *cert. denied,* 449 U.S. 873 (1980). Petitioner has failed to demonstrate direct and definite bias or interest by the arbitrator.

In its opposition to motion to dismiss and cross motion to vacate award, the petitioner argues essentially that the arbitrator failed to disclose his prior relationship with local counsel for the respondents; the disclosure made by local counsel for the respondents was limited and misleading; and that a failure to disclose dealings that might create a possible bias are grounds for vacating an award.[6]

The disclosure made by local counsel for the respondents could be construed as being incomplete and misleading because it failed to disclose that the arbitrator was to testify as an *expert* witness in the *Sparky's* case, and that the arbitrator had contracted to testify rather than having merely been "called" as a witness.

Notwithstanding these shortcomings, petitioner was aware that the arbitrator had testified in the *Sparky's supra,* as an expert witness because in his letter to the AAA dated January 24, 1994, Mr. Eckstein, owner of IRIE, stated that he saw no conflict with the arbitrator being a witness *in other construction proceedings,* that it was on the strength of his professional background that he preferred the arbitrator be the one to preside over his matter, and the fact that the arbitrator was being asked to testify in other proceedings only confirmed his choice. While the word "expert" was never used, Mr. Eckstein intimated that he was in favor of a professional who testified about matters related to his profession, and it is fairly common knowledge that professionals who testify in judicial proceedings about matters specific to their field do so, more often than not, as expert witnesses. It is equally known that expert witnesses are, invariably, paid for their services. Thus, a strong inference arises that Mr. Eckstein understood the arbitrator's role in *Sparky's supra,* was that of an expert witness providing expert testimony, and not merely a lay witness testifying subject to an ordinary subpoena.

While arbitrators are obligated to disclose possible bias, *Sanko S.S. Co. Ltd. v. Cook Industries, Inc.,* 495 F.2d 1260 (2d Cir. 1973)

---

[6] *Graphic Arts Int'l Union, Local 97-B v. Haddon Craftsmen, Inc.,* 489 F.Supp. 1088 (D.C. Pa. 1979).

citing *Commonwealth Coatings v. Continental Casualty Co.*, 393 U.S. 145 (1968), only clear evidence of impropriety justifies the denial of summary confirmation of an arbitration award. *National Bulk Carriers v. Princess Management*, 597 F.2d 819 (2d Cir. 1979). Admittedly, the arbitrator involved in this matter was derelict in his duty to independently disclose possible bias; *to wit:* he failed to *personally* disclose his involvement in the *Sparky's* case. However, the record before the court is devoid of clear evidence of *impropriety*[7] without which the arbitration award must be confirmed. Accordingly, relief pursuant to 9 U.S.C. § 10(a)(2) must be denied.

## C. *Arbitrator Is Not Guilty Of Misconduct Under 9 U.S.C. § 10(a)(3) Because He Rejected An Interpretation Of A Contract Provision In Dispute Advanced By The Non-Prevailing Party Even If By Doing So The Arbitration Committed An Error Of Law.*

Petitioner alleged that the arbitrator is guilty of misconduct by disregarding the express terms of the contract as they pertain to the cost of the project. Petitioner further alleged that Mr. Gary Turner, in his role as designer and contract administrator, was the individual to whom all contract disputes between contractor and owner were to have been brought prior to arbitration, and that the parties' contract required the submission of any dispute to Mr. Turner, as a condition precedent to arbitration. The undisputed facts before the Court indicates otherwise.

Under Article 4 of the General Conditions of the Contract, Section 4.3.2 upon which petitioner heavily relies states:

> **Decision of Architect.** Claims, including those alleging an error or omission by the architect, shall be referred initially to the *architect* for action as provided in Subparagraph 4.4. A decision by the *architect*, as provided in Subparagraph 4.4.4, shall be required as a condition precedent to arbitration or litigation of a Claim between the Contractor and Owner as to all such matters arising

[7]It is unclear whether the arbitrator had to make a separate and or independent disclosure when counsel for respondents had already disclosed the relationship that existed between himself and the arbitrator without any objection by petitioner.

prior to the date final payment is due, regardless of (1) whether such matters relate to execution and progress of the Work or (2) the extent to which the Work has been completed. The decision by the *Architect* in response to a Claim shall not be a condition precedent to arbitration or litigation in the event (1) *the position of Architect is vacant,* (2) the *Architect* has not received evidence or has failed to render a decision within agreed limits, (3) the *Architect* has failed to take action required under Subparagraph 4.4.4 within 30 days after the Claim is made, (4) 45 days have passed after the Claim has been referred to the Architect or (5) the Claim relates to a mechanic's lien. (Emphasis Provided).

Nowhere in this subparagraph, or in the entire contract for that matter, is there any provision that refers to a designer or a draftsman. Indeed, petitioner's Exhibit "A" identifies Mr. Turner as Project Designer, Contract Supervisor, and Licensed Draftsman. *A draftsman is not an architect.* Subparagraph 4.1.1 defines an architect as "the person lawfully licensed to practice architecture or an entity lawfully practicing architecture identified as such in the Agreement and is referred to throughout the Contract Documents as if singular in number. . ." The record is devoid of any evidence whatsoever that Mr. Turner is a lawfully licensed architect. In the U. S. Virgin Islands it is unlawful for anyone to practice architecture without being licensed to do so. V.I. Code Ann. tit. 27, § 289 (1972). A person having a draftsman's license, but who has not taken and passed an architect's exam, or otherwise met the qualifications prescribed under V.I. Code Ann. tit. 27, § 283 *et seq.,* is not an architect. The only license listed by Mr. Turner is his draftman's license. Absent any indication that Gary Turner also possesses an architect's license, the Court finds that he never had one.

■ Because Mr. Turner is not an architect, that portion of Subparagraph 4.3.2 requiring claims to be initially referred to the architect is superseded by another provision contained therein; *to wit:* "The decision of the Architect in response to a Claim *shall not be a condition precedent to arbitration or litigation in the event (1) the*

*position of Architect is vacant . . ."* A fortiori, the arbitrator was entitled to hear any and all claims submitted to him since no architect existed to submit a claim to.

Having established that the claims were properly before the arbitrator, he, in determining the cost of the project, evidently examined the change orders and, finding them invalid, readjusted the final contract price. Petitioner contends that the contract was not a guaranteed maximum price contract but rather a cost plus contract. The record reflects that the contract was one that incorporated both features. In this regard, the contract is ambiguous because these provisions can reasonably be interpreted differently, each producing a different contract price. Language is ambiguous when words used to express meaning and the intention of parties are insufficient in that the contract may be understood to reach two or more possible meanings. *CAT Aircraft Leasing, Inc. v. the Cessna Aircraft Co.,* 22 V.I. 442, 445 (D.V.I. 1986) (quoting *Qwenzer v. Qwenzer,* 587 P.2d 880, 882 (Kan. 1978)).

■ Article 7 of the supplemental General Conditions of the Contract establishes the procedures for effectuating changes in the work. Subparagraph 7.1.1 states that "changes in the work may be accomplished. . . *by Change Order,* construction Change Directive, or order for a minor change. . ." Subparagraph 7.2.1 further provides that a Change Order is "a written instrument *prepared by the Architect and signed by the Owner, Contractor and Architect,* stating their agreement upon all of the following: (1) a change of work; (2) the amount of the adjudgment in the Contract Sum, if any; and (3) the extent of the adjustment in the Contract Time, if any." The Change Orders disallowed by the arbitrator were invalid in several respects. They were not prepared by an architect, neither were they signed by either the architect (for there was none), the owner, or the contractor. Because the Change Orders were invalid, the arbitrator did not disregard the contract by not adding the costs stated in the Change Orders of the guaranteed maximum price.

With respect of the contention that the arbitration is guilty of misconduct because he refused to hear evidence pertinent or material to the contract, petitioner has not supported this allegation with any evidence whatsoever. Accordingly, the Court finds the contention without merit.

■ Assuming *arguendo* that IRIE's interpretation of the contract was correct, he would fare no better. This Court's review of an arbitration award is circumscribed by 9 U.S.C. § 10 (1982), which limits the Court's role to determining whether the parties received a fair and honest hearing on a matter within the arbitrator's authority. *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 62 (3d Cir. 1986); *See, also, Swift Industries, Inc. v. Botany Industries, Inc.*, 466 F.2d 59, 62 (3d Cir. 1972). The Court may not take issue with the arbitrator's interpretation for the contract, *Sun Ship Inc., supra*, at 62 (quoting *Bernhardt v. Polygraphic Co.*, 350 U.S. 198, 203 n.4 (1956); or whether the arbitrator committed an error of law, as long as the award *draws its essence from the collective bargaining agreement. Local No. P-1236 Amalgamated Meat Cutters & Butcher Workers of North America, AFL-CIO v. Jones Dairy Farm*, 681 F.2d 1142, 1144 (7th Cir. 1982); *See, also, Ludwig Hanold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1127-28 (3d Cir. 1969). Therefore, even if the arbitrator had incorrectly interpreted the contract, this Court could only vacate the arbitrator's award if one of the criteria set forth at 9 U.S.C. § 10(a) had been satisfied.

## III. CONCLUSION

In view of the foregoing, the Court must deny the petitioner's application to vacate the arbitration award because: (1) the arbitrator's failure to independently disclose his somewhat tenuous business relationship with counsel for the respondents was not indicative of evident partiality since a substantial disclosure had been made by respondent's counsel without objection by petitioner; (2) the arbitrator had a rational basis for rejection the petitioner's interpretation for the contract provisions in dispute; and (3) assuming arguendo that the arbitrator committed an error of law in his interpretation for the contract provisions, said error does not constitute a legitimate basis for vacating the arbitrator's award.

No violation of Title 9 U.S.C. §§ 10(a)(2), 10(a)(3), or 10(a)(4) having been found, the arbitrator's award shall be confirmed.

DATED October 7, 1999